## CITY OF ST. LOUIS v. ST. LOUIS TRANSFER COMPANY, Appellant.

### Division One, April 2, 1914.

1. **APPELLATE JURISDICTION: City of St. Louis a Party.** The Supreme Court has jurisdiction of a cause to which the city of St. Louis is a party, notwithstanding the amount in dispute is less than $7500.

2. **VEHICLE LICENSE: Width of Tires: Invalid Ordinance.** The proviso to section 1708 of article 2 of chapter 23 of the "Ordinance in Revision of the General Ordinances" of the city of St. Louis, relating to the width of tires of vehicles used on the streets, is invalid and void, because not authorized by the charter, as stated in State ex rel. v. Clifford, 228 Mo. 194; but so much of the ordinance as precedes the proviso, being that part which charges a license tax on each vehicle, wagon, etc., in use on the streets, is not invalid; and if in the Clifford case it was meant to declare the whole ordinance invalid, instead of only the proviso, as was likely intended, then that case was to that extent wrong.

3. ———: ———: ———: **Separable Provisions.** It cannot be said that the Municipal Assembly would not have given legislative sanction to the Vehicle License Ordinance had it not contained the invalid proviso concerning the width of tires; and that part of it imposing a license tax upon wagons and other vehicles used on the streets, being separable from the proviso and not being dependent upon it, is not invalid.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*Randolph Laughlin* for appellant.

(1) The allegation that section 1708 of the Revised Ordinances of 1900 "was at all times mentioned herein in full force and effect" is the averment of a mere conclusion of law, and therefore was not admitted, either by the demurrer, or by the admission made

in open court of the truth of the averments of fact. Knapp, Stout & Co. v. St. Louis, 156 Mo. 352; State ex rel. v. Aloe, 152 Mo. 476; Bradley v. Franklin County, 65 Mo. 639. (2) Section 1708 of the Revised Ordinances of 1900 was not, at the time of its passage, or at any time thereafter, "in full force and effect," but, on the contrary, is and always was invalid. State ex rel. v. Clifford, 228 Mo. 208; St. Louis v. Cool, 228 Mo. 210.

*William E. Baird* and *Truman P. Young* for respondent.

(1) The opinion in the case of State ex rel. v. Clifford, 228 Mo. 194, decided only that the entire proviso of section 1708 of the Municipal Code of St. Louis of 1901 was void. It did not decide that the entire section 1708 was void. This is obvious from a reading of the opinion. It is also obvious from the following considerations: (a) The relator's petition for the writ of mandamus attacked only the proviso. It conceded the validity of section 1708 and asked that a license be issued under that section upon payment of the proper fees. (b) When the case reached this court there was no contention raised in the brief for the relator that section 1708 was invalid in its entirety. The only question was as to the validity of the proviso. (c) The court ruled that the proviso was invalid, but remanded the case with directions to issue a mandamus for the relief asked. This judgment recognized the validity of section 1708 and required the defendant to issue a license under that section upon payment of the proper fees. (2) If this court in the case of State ex rel. v. Clifford, 228 Mo. 194, had. undertaken to declare the entire section 1708 of the Municipal Code of 1901 void, the decision would have been of no effect because the question was not

raised upon the record. If a court undertakes to go beyond the issues, the decision is *coram non judice*. The court will not *sua sponte* render a decision upon a legal question, nor will it create issues not raised by the pleadings.    Courts can only decide the issues raised by parties litigant. The judgment of a court, in order to be valid, must rest upon a substantial foundation, in the record.    Munday v. Vail, 34 N. J. L. 418; Garland v. Davis, 4 How. 131; Windsor v. McVeigh, 93 U. S. 274; Reynolds v. Stockton, 140 U. S. 254; Seamster v. Blackstock, 83 Va. 232; 1 Freeman on Judgments (4 Ed.), pp. 196, 197, sec. 120-C. (3)    Section 1708 *is in all respects valid except that portion included within the proviso and which attempts to regulate the width of tires.*    The body of section 1708, exclusive of the proviso, has been in force with little change ever since January 7, 1878, and was held valid in St. Louis v. Green, 7 Mo. App. 468, and St. Louis v. Green, 70 Mo. 562.    The invalidity of the proviso does not affect the body of the section.    It is an old and well recognized rule that an ordinance or a statute may be void in part and valid in part, where the invalid portion is separable so that it may be discarded and the valid portion may then be enforced. St. Louis v. Dairy Co., 190 Mo. 492; State v. Bockstruck, 136 Mo. 335; Rockville v. Merchant, 60 Mo. App. 368; Lamar v. Weidman, 57 Mo. App. 507; State ex rel. v. St. Louis, 241 Mo. 231.

GRAVES, J.—This is an action by the city of St. Louis to recover from the defendant corporation certain license taxes, upon vehicles operated by it in the city of St. Louis, for the years 1905, 1906, 1907, 1908, 1909, and 1910.    The petition contains a count for each year.    The first count of the petition is thus outlined in defendant's abstract:

The first count of the petition alleges the incorporation of the parties, plaintiff and defendant; that the defendant at all times mentioned in the petition owned and used in the streets and public highways of the plaintiff the number and kinds of vehicles therein stated; that there was at all said times "in full force and effect" an ordinance of the city of St. Louis, known as section 1708 of a revised ordinance of said city, styled "The Municipal Code of St. Louis," approved April 3, 1900; that by the terms of said ordinance it was provided that there should be annually levied and collected a license tax upon all kinds of vehicles used in the streets or public ways of the city, the following sums, to-wit:

On each wagon drawn by eight or more horses ........$30.00
On each wagon drawn by six horses ................. 15.00
On each omnibus, drag, tallyho coach, lighted vehicle or
    stage coach drawn by four horses ................. 10.00
On each wagon drawn by three horses ............... 7.00
On each omnibus or wagon drawn by two horses ...... 5.00
On each wagon or cart drawn by one horse ........... 2.00
On each hack or hackney carriage drawn by two horses 5.00
On each barouche, drag, coach, coupe, rockaway, surry,
    wagon, landau, or other vehicle drawn by two horses 3.00
On each cab drawn by one horse ..................... 2.50
On each barouche drawn by one horse ............... 2.50
On each four-passenger park wagon drawn by one horse 2.00
On each buggy ...................................... 1.50
On each driving cart or sulky ........................ 1.50
On each bicycle, tricycle or velocipede ................. 1.00
On each vehicle not specifically mentioned ........... 1.50

That the defendant, during the year 1905, was the owner of and did use in the streets and public ways of the city the following described vehicles, to-wit:

4 wagons each drawn by one horse,
125 wagons drawn by two horses,
4 wagons each drawn by three horses,
1 wagon drawn by four horses.

That by reason of the facts aforesaid and by virtue of the terms of said ordinance it became and was the duty of the defendant to pay to the city of St. Louis license taxes as follows:

On said four one-horse wagons at the rate of $2 each,
    making a total of .............................. $8.00
On said 125 two-horse wagons at the rate of $5 each,
    making a total of .............................. 625.00
On said four three-horse wagons, at the rate of $7 each,
    making a total of ................................ 28.00
On said one four-horse wagon ....................... 15.00

    Making an aggregate amount of .................$676.00

. Which became due and payable from the defendant to the plaintiff for the license taxes on such vehicles for the year 1905. That demand was made of the defendant by the license collector of the city of St. Louis to pay the said sum, but that no part thereof has been paid.

Wherefore plaintiff prays judgment against defendant for the sum of six hundred and seventy-six dollars, together with interest and costs.

The abstract before us alleges that the other five counts were in the same form and prayed judgment for the same sum in each, but the years mentioned were different.

To this petition a general demurrer was filed and overruled, and the defendant refusing to plead further, judgment was entered for the plaintiff for the sum of $4182.63, from which said judgment the defendant has appealed. The city of St. Louis being a party, the jurisdiction is lodged here, notwithstanding the amount involved.

The turning point in the case is the validity or invalidity of the ordinance pleaded. Other incidental questions are. suggested, which with the vital question will be noted in the course of the opinion.

I. At some time prior to April 3, 1900 (the counsel for defendant says in 1898), the city of St. Louis passed what counsel denominates the "Wide-Tire Ordinance." Counsel for defendant further gives us the information that on April 3, 1900, the legislative branch of the city government of the city of St. Louis "passed an ordinance number 19,991, entitled 'Ordinance in Revision of the General Ordinances' which contains nearly 2500 sections, and among others, section 1708 of article 2 of chapter 23 of said ordinance. That this section 1708 embodied and was the Wide-Tire Ordinance of 1898."

In the view we take of the law of this case, we should set out said section 1708 in full. It reads:

"Sec. 1708. *License tax on* . . . Regulations. There shall be annually levied and collected a license tax upon all kinds of vehicles, including bicycles, tricycles, and velocipedes, used in the streets or public ways of the city for trade, traffic, pleasure or any other purpose, public or private, except vehicles for pleasure, owned and used by non-residents of the city, and bicycles, tricycles and velocipedes owned and used solely by children under twelve years of age, the following sums, to-wit: On each wagon or truck used for hauling boilers, engines, cable ropes, safes or stone, and drawn by eight or more horses, thirty dollars; on each wagon drawn by six horses, twelve dollars; on each wagon drawn by four horses, fifteen dollars; on each omnibus drawn by four horses, ten dollars; on each stage coach drawn by four horses, ten dollars; on each drag, tallyho, coach or lighted vehicle drawn by four horses, ten dollars; on each wagon drawn by three horses, seven dollars; on each omnibus drawn by two horses, five dollars; on each wagon drawn by two horses, five dollars; on each wagon or cart drawn by one horse, two dollars; on each hack or hackney carriage drawn by two horses, five dollars; on each barouche, drag, coach, coupe, rockaway, surrey, wagon, landau or other like vehicle drawn by two horses, three dollars; on each cab driven by one horse, two dollars and fifty cents; on each barouche drawn by one horse, two dollars and fifty cents; on each four-passenger surrey drawn by one horse, two dollars; on each four-passenger park wagon drawn by one horse, two dollars; on each buggy, one dollar and fifty cents; on each driving cart or sulky, one dollar and fifty cents; on each bicycle, tricycle or velocipede, one dollar; on each vehicle not specifically mentioned, one dollar and fifty cents; provided, that from and after the first day of January, eighteen hundred and ninety-nine, no vehicle

*Vehicle License: Clifford Case.*

of any kind or description shall be used on the streets of this city for any purpose whatever unless all the wheels of such vehicle shall be constructed with a width of tire corresponding to the size of an axle on the following scale, to-wit:

### "*Iron or Steel Axles.*

"Vehicles having axles of iron or steel, the wheel shall have width of tires, as follows, to-wit: If the axle is of a width of thickness or diameter of one and one-fourth inches, and tires must be at least one and one-fourth inches wide; if the axle is a width or thickness or diameter of one and one-half inches, the tire must be at least one and three-fourths inches wide; if the axle is of a width or thickness or diameter of one and five-eighths inches, the tire must be at least two inches wide; if the axle is of a width or thickness or diameter of one and three-fourths inches, the tire must be at least two and one-fourth inches wide; if the axle is of a width or thickness or diameter of one and seven-eighths inches the tire must be at least two and one-half inches wide; if the axle is of a width or thickness or diameter of two inches, the tire must be at least two and three-fourths inches wide; if the axle is of a width or thickness or diameter of two and one-eighth inches, the tire must be at least three inches wide; if the axle is of a width or thickness or diameter of two and one-fourth inches, the tire must be at least three and one-half inches wide; if the axle is of a width or thickness or diameter of two and one-half inches, the tire must be at least four inches wide; if the axle is of a width or thickness or diameter of two and three-fourths inches, the tire must be at least four and one-half inches wide; if the axle is of a width or thickness or diameter of three inches, the tire must be at least five inches wide; if the axle is of a width or thickness or diameter of three and one-half inches, the tire must be at least five and one-half inches wide; if the axle

is of a width or thickness or diameter of four inches, the tires must be at least six inches wide.

### "*Wooden Axles.*

"Vehicles having axles of wood shall have widths of tires as follows, to-wit: If the axle is of a width or thickness of three and one-half inches, the tires must be at least two and one-half inches wide; if the axle is of a width or thickness of three and three-fourths inches, the tires must be at least two and three-fourths inches wide; if the axle is of a width or thickness of four and one-quarter inches, the tires must be at least three and one-half inches wide; if the axle is of a width or thickness of four and one-half inches, the tires must be at least four and one-half inches wide; if the axle is of a width or thickness of five inches, the tire must be at least five inches wide; if the axle is of a width or thickness of five and one-half inches, the tire must be at least five and one-half inches wide; if the axle is of a width or thickness of six inches, the tires must be at least six inches wide.

### "*Miscellaneous.*

"Trucks used for hauling boilers or engines, safes or dimension stones, shall have tires at least six inches wide, and those used for hauling cable ropes shall have tires at least eight inches wide, and such trucks shall be constructed with axles of such lengths that the hind wheels shall be placed at least eight inches further apart than the front wheels thereof. Drays shall have tires at least four inches wide. All carts used for sprinkling of the streets, public ways or park ways, shall have tires at least six inches wide. If any axle, iron, steel, or wooden, is of a width or thickness or diameter exceeding one and one-fourth inches and shall be of a different thickness, width or diameter than those described in this ordinance (article), then the tires of such vehicles using such axle shall be in conformity with the next larger axle in diameter. Pro-

vided further, however, that any vehicle having rubber tires on all its wheels shall not be required to conform to the above rules as to width of tires.

### "Exemptions.

"Any vehicle which shall, prior to the first day of January, eighteen hundred and ninety-nine, be made to conform in respect to its tires to the requirement and provisions hereof, shall, from the date when the use of such tire began, and so long as such use continues until said first day of January, eighteen hundred and ninety-nine, be exempt from payment of the license tax prescribed by this section, but from and after said date all vehicles shall be subject to the provisions of this section, and it shall be unlawful to use on the streets or public ways of the city after said first day of January, eighteen hundred and ninety-nine, any vehicle unless the tires of such vehicles conform to the requirements hereof.

### "Sworn Statement Required.

"From and after the taking effect hereof, no license shall be issued for any vehicle except on the sworn statement of the applicant showing the width or thickness or diameter of the axle and the width of the tires of the vehicle for which such license is to be used, and after said first day of January, eighteen hundred and ninety-nine, such sworn statement shall show a compliance with the provisions of this section.

### "Double Tax Penalty.

"The annual tax herein provided shall be doubled on the first day of April of each year for every license not issued and paid for before said day, and any person or persons, partnership or corporation, who shall after the first day of June of each year, drive or use or permit or cause to be driven or used, on any of the streets or public places of the city of St. Louis, any unlicensed vehicle, shall be deemed

guilty of a misdemeanor, and upon conviction thereof, shall, in addition to all other penalties and requirements, be fined as in this section hereinafter provided for the violation hereof.

### "Penalty.

"Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than ten dollars nor more than two hundred dollars, and each day's violation hereof shall be and constitute a separate offense.

### "Vehicle Inspectors—Salaries—Duty.

"Immediately after the passage of this ordinance there shall be appointed by the license commissioner (now collector) four deputies, to be known as inspectors of vehicles, who shall each be paid a salary of nine hundred dollars a year. It shall be the duty of said inspectors to ascertain whether the ordinances of the city relating to vehicles and to license taxes on vehicles are observed and to report any violation of the same, and generally to aid the license commissioner (now collector) in the collection of the vehicle license and in the enforcement of the ordinances relating to vehicles, and under the direction of the license commissioner to report to the city attorney all cases of violation of said ordinances and to aid him in the prosecution of the violation of said ordinances, and perform such other duties as the license commissioner may direct.

### "License Plate.

"The license plate for bicycles, tricycles and velocipedes shall be of the size and form prescribed by the register, and shall be attached to the front part of the steering head at the point above the front fork."

We felt constrained to set out the ordinance in full because the defendant urges that Division No. 2

of this court in State ex rel. v. Clifford, 228 Mo. 194, declares this whole ordinance void, and for that reason the city has stated no cause of action in its petition. There is some language used by Judge Fox in the Clifford case, which if taken literally, lends support to defendant's contention. In that case the "proviso" of the said ordinance as contained in said section 1708 is discussed at much length, and at the close of that discussion the learned jurist uses this language:

"It is true that an ordinance may be valid in part and void in part, and that the valid part may be given effect, if what remains after the invalid part is eliminated contains the essential elements of a complete ordinance. Where, however, an ordinance is entire, each part having a general influence over the rest, and a particular provision thereof is void, the entire ordinance will be so declared. [Kirkwood v. Meramec Highlands Co., 94 Mo. App. 637; Attorney-General v. Lowell, 67 N. H. 198; Chicago v. Gunning System, 114 Ill. App. 377.] This we find to be the case here.

"The proviso of said section 1708 of General Ordinance No. 19991 is undoubtedly void as being in excess of the charter grant of power, and the proviso having a general influence over the remaining portion of the section, and being inseparably connected therewith, the whole of said section must be declared invalid."

In the instant case the city contends that there was the inadvertent use of the word "ordinance" in this opinion whilst the court had in mind the "proviso" and not the whole ordinance. This contention of the city would seem to be borne out by the closing direction given in the opinion, thus:

"'The judgment is reversed and the cause remanded, with a direction to the lower court to grant a temporary writ of mandamus to the relator for the relief asked."

The defendant in this case was the relator in the Clifford case, supra. In the Clifford case it sought by mandamus to compel the city license collector to issue licenses for its different kinds of vehicles then being used by it. The date was the year 1905. In the Clifford case, supra, Judge Fox among other things said:

"Relator next alleges that it applied to the defendant for license in the year 1905 for 132 two-horse wagons, fourteen carriages, two four-horse wagons, four one-horse wagons and seven buggies, and tendered the amount of license fees required, but that defendant refused to issue the licenses, assigning as his reason for such refusal that the relator did not accompany its application for such licenses with the sworn statement required by the ordinance showing the width or thickness or diameter of the axles, and width of tires, and the vehicles for which such licenses were to be used."

When it is observed that this court in the Clifford case reversed the judgment *nisi* (which refused the temporary mandamus) and directed that the circuit court grant to relator a temporary writ of mandamus compelling the license collector to issue the licenses sought by relator, on the petition presented, or show cause why such should not be done, it would appear that there was no intention to declare the whole ordinance void, but only the "proviso." Relator had pleaded the full ordinance, and had tendered license fees under it, but had not made the showing by affidavit as to width of tires. If the purpose of the court was to declare the whole ordinance void, then there was left no ordinance, so far as that record showed, requiring a license on vehicles at all, and no good sense in directing a writ of mandamus of any kind. It should be noted that the application for the temporary writ was thoroughly tried out on evidence in the shape of affidavits, in the Clifford case, *nisi*.

On the other hand it appears that in a motion to modify the opinion in the Clifford case this very matter was called to the attention of Division No. 2 of this court, but the motion was overruled, without additional opinion. Whether the court thought the opinion was not susceptible of the construction now contended for by defendant, and therefore refused to modify, or whether the court by its refusal to modify aimed to emphasize the fact that the whole of section 1708 was void, we can only conjecture, every member then sitting in that Division having since passed to the great beyond. If, however, it be conceded that it was the intention in the Clifford case to declare the whole of section 1708 void, then we say that opinion is wrong, and we shall proceed in this case upon the theory, that such is the holding in the Clifford case, although when all things are considered, we have serious doubts of the court intending so to hold. What should have been done in the Clifford case and what should be held in this case we take next.

II.    We do not think that the whole of section 1708 of the Revised Ordinances of the city of St. Louis, should be declared void, and if the Clifford case, supra, should be interpreted as so holding, then such holding is wrong.

**Vehicle License: Invalid Proviso: Balance of Ordinance Valid.**

We fully concur in that portion of the opinion in the Clifford case, supra, which declares that part of the "proviso" to section 1708 is to be void. We think the reasoning of the court upon that question is well taken. After holding that this "proviso" (not the ordinance as a whole) was not so unreasonable as to make it bad upon its face, or under the proof, Judge Fox then thus proceeds:

"But whether the particular provision of the ordinance regulating the width of vehicle tires is a valid and reasonable exercise of the power granted the city by the Legislature is another question. The fifth par-

·agraph of section 26, article 3, of the charter of the
city of St. Louis, empowers the municipal assembly to
regulate by ordinance 'the width of the tires of all ve-
hicles for heavy transportation.'　This is an express
grant of power for a certain purpose, and must be
strictly construed, for where a corporation is empow-
ered by its charter to make ordinances for certain pur-
poses, its power of legislation is limited to the objects
specified, all others being excluded by implication. [St.
Louis v. Kaime, 180 Mo. 309; New Orleans v. Philippi,
9 La. Ann. 44; Douglass v. Placerville, 18 Cal. 643;
Leavenworth v. Norton, 1 Kan. 432; Kyle .v. Malin, 8
Ind. 34.]　The defendant, however, contends that this
express power is merely a corollary of the general
power granted to the corporation in another paragraph
of the same section of the charter to improve the
streets, etc., and to regulate the use thereof, and that
the general power so granted is not limited by the spe-
cial power as to the regulation of the width of tires of
vehicles for heavy transportation.　That contention
does not consist with the rule of construction laid down
in the case of Ruschenberg v. Railroad, 161 Mo. 70:
'When there are two acts, or charter provisions, or or-
dinances, one of which is special and particular and
certainly includes the matter in question, and the other
general, and such that, if standing alone, it would in-
clude the same matter, and thus conflict with the spe-
cial act, the special act must be taken as intended to
constitute an exception to the general act, and espe-
cially is this the law when such general and special
acts are contemporaneous.'　That rule is approved in
the Kaime case, supra, wherein the court also said:
'Even though it be conceded that the express grant
of power . . . would not prohibit the exercise of
the power under a general clause yet such exercise
of power ·cannot abrogate the limitations contained in
the express grant.　Hence, at last, we are relegated,
as to the extent of power which can be legally exer-

cised, to the express grant on the particular subject-matter to which the legislation is to be made applicable:'

"Comparing the ordinance with the charter provision on the subject of wide tires, it will be noted that the ordinance nowhere uses the term 'heavy transportation,' nor makes any discrimination between vehicles for light and heavy transportation. The charter empowers the corporation to regulate the width of tires of vehicles for heavy transportation only, while the ordinance provision embraces vehicles of every kind and description, whether for light or heavy transportation. As the charter does not state what kind or character of vehicle should be regarded as a vehicle for heavy transportation, it is assumed that the Legislature intended that the matter should be left to the discretion of the Municipal Assembly. But there is no way of determining from the words of the ordinance what constitutes a vehicle for heavy transportation. The ordinance simply requires all vehicles having axles of iron or steel of a thickness or diameter of one and one-fourth inches and over to have on their wheels tires of a certain width, corresponding to the size or thickness of the axle; and to say that the Municipal Assembly intended by that provision to declare that all such vehicles are vehicles for heavy transportation, would be an arbitrary and unwarranted assumption. We cannot read into the ordinance a thought which the framers thereof may have had, but did not express; nor can we give the words of the ordinance a strained and artificial meaning. The words of the charter are: 'The mayor and assembly shall have power within the city . . . to regulate the width of tires of all vehicles for heavy transportation.' Under the decisions of this court, this express provision must be held to be a limitation on the powers of the Municipal Assembly. By section 4160, Revised Statutes 1899, 'words and phrases shall be taken in their plain or ordinary

and usual sense,' and it is quite plain that the words 'vehicles for heavy transportation,' as used in the charter, means vehicles constructed or built for carrying or transporting heavy loads. Contrary to the provision of the charter limited the power of the mayor and assembly to regulate the width of tires of vehicles of a certain class, or for a certain purpose, the mayor and assembly, by this ordinance, attempt to regulate the width of tires of vehicles 'of every kind and description.'

"In St. Louis v. Bell Telephone Company, 96 Mo. 623, this court said: 'Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.' [See, also, St. Louis v. Laughlin, 49 Mo. 562.]

"We are of opinion that the proviso of the ordinance in question is in excess of the power granted the city by the charter provision on the subject-matter of the regulation of the width of tires of vehicles, in that it makes no discrimination as between vehicles for light and heavy transportation."

To this portion of the opinion, and to what was said about the "proviso" not being unreasonable, we lend our concurrence. But this is as far as we can go, under our view of the law. We have set out this section in full, so that the relationship of all its parts may be seen. When it is studied, it will appear that the whole *proviso* might be stricken from the ordinance or rather the section, and still there would be left a valid license ordinance. This first portion of section 1708 (leaving out the proviso) in effect has been an ordinance of the city since 1878. [*Vide* City of St. Louis v. Green, 7 Mo. App. 468.] Its validity with one exception was upheld in that case, and upon appeal to this court that portion of the Court of Appeal's opinion was disapproved here, so that this court approved the whole ordinance. [*Vide* City of St. Louis v. Green, supra.]

The sole question here is, can we carve out the invalid portions of the *proviso,* and still have a valid act, and one within the legislative intent? We think so. It is evident that the uppermost idea of the city legislature was to impose license taxes upon vehicles. It is true that in connection with this idea of imposing the license tax, we find attached an idea of regulating the width of tires, in a manner not authorized by the charter, but in our judgment this portion of the section can be stricken out, and there will be left a valid ordinance. In the case of St. Louis v. Grafeman Dairy Co., 190 Mo. l. c. 503, a very similar question arose. In that case GANTT, J., for the Court en Banc, said:

"If, therefore, the complaint in this case alleged one or two breaches of valid provisions of the said ordinance, the court erred in quashing the whole action even though the motion was well taken as to other alleged breaches, but it is insisted that the section in question refers to both registration and license, and they are used conjunctively in the section, and are, therefore, not severable, and hence if one of the provisions is invalid then the whole section must fall. We cannot give our concurrence to this contention; that part of section ten of Ordinance 20808 requiring a vendor of cream and milk to register in the office of the Health Commissioner, and that part requiring the payment of one dollar as a registration fee, are clearly severable from the other provisions requiring the payment of a license tax. It has been uniformly ruled by this court that where the provisions of a statute or ordinance are severable and are not interdependent one upon the other, the whole will be not declared void because a part is valid, but the void portions will be eliminated and the valid parts upheld and enforced, provided this will not defeat the substantial object of the enactment. [St. Louis v. Railroad, 89 Mo. 44; City

of Tarkio v. Cook, 120 Mo. 1; State v. Clarke, 54 Mo. 17; State v. Bockstruck, 136 Mo. 335.]"

In State v. Bockstruck, 136 Mo. l. c. 353, Sher-wood, J., said:

"Now nothing is better settled than that a part of a law may be declared constitutionally invalid, and yet another portion properly separable therefrom, and therefore unexceptionable in every particular. This may be so even though the sound and unsound are in one section together. This is always the rule unless the parts sound and unsound are so mutually related, so blended together, as to constitute an entirety, making it evident that unless the act be carried into effect as a whole, it could not have received the legislative sanction. [Bishop, Stat. Crim., sec. 34, and cases cited.] There seems to be no such indication observable in this instance."

So we say in the case at bar. It does not appear that the legislative sanction would not have been given to this license ordinance had this proviso as to width of tire been left out. On the other hand it is clear that the legislative thought went out to license taxes and no doubt with the the monetary results . uppermost in mind. These license taxes, as estimated in the briefs, amount to many thousand dollars annually. Later, in the case of State ex rel. v. St. Louis, 241 Mo. l. c. 246, Lamm, J., said:

"We shall not undertake to re-examine or reformulate the learning on the question. The books are full of it and counsel on both sides cite cases decided by this court, and text-writers, showing under what circumstances an unconstitutional and therefore dead provision may be pruned from the main stem of a law without impairing the stem itself. The prying mind can consult the reporter's head notes for them. There is a very late case, State ex rel. v. Gordon, 236 Mo. 1 .c. 170 et seq., where the matter was in judgment and the right doctrine is announced. Briefly, the touch-

stone whereby a correct conclusion is to be reached will be found in correct answers to these questions: Is the entire law built up around the unconstitutional proviso? Are all the provisions of the enactment inseparable, and so interwoven and connected as to be interdependent? Does the statute attempt to accomplish instead of two objects (one valid, the other invalid) only, one object and that one invalid? Does the proviso furnish the inducement, the consideration, the legislative motive for the whole act? Is it apparent that but for the proviso the Forty-fourth General Assembly would not have enacted the law? With the proviso cut away is there left only an incomplete enactment, one not symmetrically rounded out and, therefore, incapable of enforcement? If those questions must be judicially answered yes, then the whole act falls to the ground with the proviso—if no, then the law, bad in part, may be good in part; for the courts in this behalf do not apply the ideas shadowed forth in the metaphors of Paul and Solomon where the one speaks of a little leaven that leaveneth the whole lump, and the other comments on the all-pervading and unsavory effect of dead flies in the apothecary's ointment.

"We are cited to a case (Skagit County v. Stiles, 10 Wash. 388) holding that where a part of the law is bad the presumption is generally that the whole is bad. Such a presumption I think of doubtful existence and of little value if existing at all. To the contrary we approach the constitutionality of a law with a strong, even a violent, presumption it is valid. Its invalidity must be made to appear beyond a reasonable doubt and every allowable art, part and act of judicial power should be exercised in so interpreting the law, if possible in reason, that none of it perish by construction. But if that be impossible and some of it, through inherent vice, must perish, do not the separable and independent parts of the law still stand pro-

tected by the presumption of validity attending the whole law at the outset? Why not? To a little alter and use a simile of Lord Hobart (Maleverer v. Redshaw, 1 Mod. 35), which I have had occasion to use before in another form, a judge is not to be like a tyrant, making all void when part is void, but like a nursing father, making void only that part where the fault is and preserving the rest if he can.

"We are all of one accord in the opinion that the proviso being cut away as unconstitutional, there was left remaining a perfect, constitutional law capable of enforcement; that the proviso did not furnish the whole legislative inducement and consideration for the law; that there is no apparent reason why the Legislature would not have passed the law without the invalid proviso; that there is a main purpose running like a marking thread through the warp and woof of the law and a perfect plan outlined to effectuate that purpose, independent of the proviso; that the proviso is in its nature ancillary, a mere incidental or possible means of effectuating the main purpose of the law, if and only if, conditions were found to exist bringing the incidental or ancillary scheme into play; that the enactment may be likened unto a channel in which water runs, the proviso likened unto a canal tapping that channel and taking that water, whereby if the sluice gate be lowered and the canal be dammed at its head, the water naturally takes the main channel again."

The ordinance before us is readily divided into two parts (1) that portion providing for a license tax upon the several different kinds and classes of vehicles, and (2) regulations as to the construction of the vehicles themselves. One portion is not so dependent upon the other as to require us to say that if one is invalid the whole shall fall. Nor is the *proviso* portion of this ordinance so connected with the residue of the act as to warrant the belief that the city legislature so intended the two provisions as a whole, and would not

have passed the first portion, had it known the latter portion was invalid. Tried by every test, we believe that the *proviso* with reference to tires (the invalid portion of this ordinance) can be stricken therefrom and leave a valid ordinance, upon which the city is entitled to recover against the defendant. For other and fuller discussions of the question, *vide* State ex rel. v. Gordon, 236 Mo. l. c. 170; State ex rel. v. Taylor, 224 Mo. l. c. 474; State ex inf. v. Washburn, 167 Mo. 680; Cooley's Constitutional Limitations (7 Ed.), p. 247.

There is no other substantial question involved upon this appeal. From what has been said, it follows that the judgment *nisi* should be affirmed. It is so ordered. All concur.