Patricia Breckenridge, Chief Justice
The City of St. Peters appeals the trial court’s dismissal of the city’s prosecution of Bonnie A. Roeder for violating ordinance 4536 by failing to stop at a red light while that violation was detected by an automated enforcement system. After a jury found Ms. Roeder guilty of violating ordinance 4536, Ms. Roeder filed a second *541 motion to dismiss, arguing (1) ordinance 4536 conflicts with state law by not assessing points against a violator’s driving record; (2) the notice of violation does not contain the information required by Rule 87.38(b); and (3) ordinance 4536 is being applied in violation of her right to equal protection. The trial court sustained Ms. Roeder’s motion and dismissed the charge against Ms. Roeder.
On appeal, the city asserts that the trial court erred in dismissing the prosecution because ordinance 4536 does not conflict with state law regarding the assessment of points, any such conflict is not a viable defense to the city’s prosecution, and any invalid provision can be severed from the rest of the ordinance.[1] This Court finds ordinance 4536 conflicts with section 302.302.1,[2] which requires the assessment of two points for a moving violation, because the ordinance creates a moving violation and states that no points will be assessed. The portion of ordinance 4536 that conflicts with state law can be severed from the valid portions, but such severance will be given effect prospectively only. Severance and enforcement of the remaining valid portion of ordinance 4536 against Ms. Roeder would violate due process by imposing a direct and negative consequence of her conviction when the ordinance affirmatively informed Ms. Roeder that a violation of the ordinance would not result in points. Accordingly, this Court affirms the trial court’s judgment dismissing the charge for violating ordinance 4536. '
Factual and Procedural Background
The city enacted ordinance 4536, codified in St. Peters City Code section 335.095, to authorize the installation and use of an automated red light enforcement system. Ordinance 4536 further creates an offense that occurs when a “person fails to comply with the City Traffic Code and the violation is detected through the automated red light enforcement system.” As relevant to this case, the city’s traffic code states, “The driver of any vehicle shall obey the instructions of any official traffic control device.” St. Peters Code section 315.030.
The automated red light enforcement system consists of cameras and vehicle sensors capable of producing images recording a motor vehicle running a red light. The system produces images of an offending vehicle, the vehicle’s license plate, the vehicle’s operator, and the traffic control signal. These images are reviewed by an officer of the St. Peters police department. If it is determined that a violation occurred, “the officer may use any lawful means to identify the vehicle’s owner.” A summons will then be served on the vehicle’s owner within 60 days of the violation. The ordinance classifies a violation as an infraction punishable by a fine no greater than $200 and states that “[i]n no casé shall points be assessed against any person ... for a conviction of a violation of the City Traffic Code detected through the automated red light enforcement system.” Id.
On June 15, 2012, the city issued a notice of violation and summons to Bonnie Roeder. The notice was titled “City of St. Peters, MO Red Light Photo Enforcement Program” and stated that a vehicle regis *542 tered to Ms. 'Roeder was in violation of ordinance 4536.[3] Specifically, it stated that a red light camera enforcement system captured her vehicle running a red light. The instructions attached to the notice provided Ms. Roeder three options: (1) pay a $110 fine; (2) submit an “Affidavit of Non-Responsibility” showing either that Ms. Roeder sold the vehicle prior to the violation date or that the vehicle or license plates were stolen at the time of the violation; or (3) appear in court on July 31, 2012, to have the matter reviewed by a municipal judge. The notice stated that the failure to either pay the fine on or before July 31, 2012, or appear in court on that date may result in a warrant being issued for Ms. Roeder’s arrest. The notice also stated that no points would be assessed to Ms. Roeder’s driving record.
Ms. Roeder failed to complete any of the three options, and the matter was set for a municipal division hearing in September 2012. Ms. Roeder failed to appear, and the city charged her with an additional violation of failure to appear. By Ms. Roeder’s request, the municipal division then certified the case for a jury trial in the circuit court of St. Charles County. Prior to trial, Ms. Roeder filed a motion to dismiss, asserting the notice of violation violated her due process rights by not providing statements showing probable cause to believe Ms. Roeder was operating the motor vehicle at the time of the violation, ordinance 4536 violated her due process rights by creating a rebutta-ble presumption that the owner of the motor vehicle was the operator, and ordinance 4536 conflicted with state law by not assessing points. She also asserted an “affirmative defense” of unlawful rulemak-ing, alleging the city and Missouri department of revenue “engaged in unlawful rulemaking by using Missouri Charge Code Manual No Points Charge for Red Light Cameras” because that charge code was created informally. The trial court overruled Ms. Roeder’s motion to dismiss.
The jury trial occurred on September 5, 2013. During trial, the city presented four still photographs showing: (1) Ms. Roe-der’s motor vehicle traveling toward an intersection but not yet to the stop line; (2) Ms. Roeder’s motor vehicle beyond the stop line and in the intersection after the traffic light turned red; (3) the front window of Ms. Roeder’s motor vehicle through which Ms. Roeder’s face can be seen; and (4) the rear of Ms. Roeder’s motor vehicle, including the license plate. The city also played video of the motor vehicle driving through the intersection after the light had turned red.[4] At the close of the evidence, the trial court acquitted Ms. Roeder of the failure to appear charge, and the jury found Ms. Roeder guilty of violating ordinance 4536 and assessed a $110 fine.
Following the court of appeal’s ruling in Unverferth v. City of Florissant, 419 S.W.3d 76 (Mo. App. 2013), declaring a similar ordinance void, Ms. Roeder filed a renewed motion for acquittal. In her motion, Ms. Roeder asserted three arguments: (1) ordinance 4536 conflicts with state law in that it does not assess points against a violator’s driving record; (2) the notice of violation does not contain the information required by Rule 37.33(b); and (3) ordinance 4536 is being applied in violation of her right to equal protection because operators of motor vehicles that they personally own are prosecuted when operators of motor vehicles owned by a *543 trust, corporation, or company are not prosecuted.
The trial court treated the motion as a renewal of Ms. Roeder’s motion to dismiss and relied on Unverferth, 419 S.W.3d 76, to find that the city’s ordinance conflicted with state law by not assessing points against a violator’s driving record. The court sustained the motion and dismissed the charge for violating ordinance 4536.
The city appeals. After an opinion by the court of appeals, the case was transferred to this Court. Mo. Const. art. V, sec. 10.
Standard of Review
This Court will affirm a trial court’s dismissal if the motion to dismiss can be sustained on any ground alleged in the motion. Foster v. State, 352 S.W.3d 357, 359 (Mo. banc 2011). Interpretation of municipal ordinances and determination of whether they conflict with state law are questions of law and reviewed de novo. State ex rel. Sunshine Enters. of Missouri, Inc. v. Bd. of Adjustment of City of St Ann, 64 S.W.3d 310, 312-14 (Mo. banc 2002). The rules governing interpretation of a statute are employed when interpreting an ordinance. State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City, 24 S.W.3d 681, 684 (Mo. banc 2000). Accordingly, the Court will ascertain the intent of the municipality, give effect to that intent, if possible, and consider the plain and ordinary meaning of the language used. Id.
Ordinance Conflicts with State Law
In her original and renewed motions to’ dismiss, Ms. Roeder claimed ordinance 4536 is void because it conflicts with state law by not assessing points against a violator’s driving record. The trial court agreed, finding that a violation of ordinance 4536 is a “moving violation” and, therefore, that the ordinance conflicts with section 302.302.1(1), which providés that points must be assessed for “any moving violation” of a municipal ordinance.
On appeal, the city asserts the trial court erred in dismissing the charge against Ms. Roeder for violating ordinance 4536 because the ordinance does not conflict with state law. The city argues that section 302.302 permits the director of revenue to classify certain offenses as non-point offenses and that the director has exercised this discretion in designating red light camera violations as non-point offenses. The city further maintains that the ordinance complies with state law because, under its authority pursuant to sections 43.505 and 43.512, RSMo 2000, the department of public safety published the Missouri charge code manual with a charge code for a red light camera violation that does not assess points and because the city is required to follow, the charge code under section 43.512, RSMo 2000. Alternatively, the city argues that any purported conflict does not provide a defense to the charge against Ms. Roeder because the statutory obligation to impose points for a moving violation is not mandatory and that the trial court erred in not enforcing the ordinance’s severability clause.
Courts will construe a municipal ordinance to uphold its validity “unless the ordinance is expressly inconsistent or in irreconcilable conflict with the general law of the state.” McCollum v. Dir. of Revenue, 906 S.W.2d 368, 369 (Mo. banc 1995). When the ordinance conflicts with a statute, the ordinance is void. Id. Further, section 304.120 provides that “[n]o ordinance shall be valid which contains provisions contrary to or in conflict with this chapter, except as herein provided.” “The test for determining if a conflict exists is whether the ordinance permits what the *544 statute prohibits or prohibits what the statute permits.” Page W., Inc. v. Cmty. Fire Prot. Dist. of St Louis Cnty., 636 S.W.2d 65, 67 (Mo. banc 1982) (internal quotations omitted). A municipal ordinance does not conflict with state law by making conduct that is a violation of state law also a violation of the ordinance. See Strode v. Dir. of Revenue, 724 S.W.2d 245, 247-48 (Mo. banc 1987). Additionally, municipalities are authorized to “[m]ake additional rules of the road or traffic regulations to meet their needs and traffic conditions.” Section 304.120.
Section 302.302.1 sets out the system for the assessment of points and provides in pertinent part:
The director of revenue shall put into effect a point system for the suspension and revocation of licenses. Points shall be assessed only after a conviction or forfeiture of collateral. The initial point value is as follows:
(1) Any moving violation of a state law or county or municipal or federal traffic ordinance or regulation not listed in this section, other than a violation of vehicle equipment provisions or a court-ordered supervision as provided in section 302.303 . 2 points
Hence, a conviction for a violation of a municipal ordinance that is a “moving violation” and not otherwise listed in section 302.302.1 requires the assessment of two points against the violator’s driving record.
An offense is committed under ordinance 4536 when a “person fails to comply with the City Traffic Code and the violation is detected through the automated red light enforcement system.” The city charged Ms. Roeder under ordinance 4536 for failing to comply with the city’s traffic code section 315.030, which states that “[t]he driver of any vehicle shall obey the instructions of any official traffic control device.” Specifically, the city charged Ms. Roeder with driving through the intersection when the light was red while that violation was detected by an automated enforcement system.
Running a red light, regardless of whether detected by an automated enforcement system, is not an offense specifically listed in section 302.302.1. Nonetheless, it is encompassed in the statute’s catch-all category for moving violations not otherwise listed. A “moving violation” is defined as:
[T]hat character of traffic violation where at the time of violation the motor vehicle involved is in motion, except that the term does not include the driving of a motor vehicle without a valid motor vehicle registration license, or violations of sections 304.170 to 304.240, inclusive, relating to sizes and weights of vehicles.
Section 302.010(13). Failing to obey a traffic control device, or running a red light, is a moving violation as defined by section 302.010 because the motor vehicle involved in the violation is in motion at the time the violation occurs. See Brunner v. City of Arnold, 427 S.W.3d 201, 229 (Mo. App.2013); Damon v. City of Kansas City, 419 S.W.3d 162, 187 (Mo. App. 2013); Edwards v. City of Ellisville, 426 S.W.3d 644, 664-65 (Mo.App.2013); Unverferth, 419 S.W.3d at 98 (“Common sense and collective experience suggest that a person cannot fail to stop at a red light without being in motion.”). Accordingly, section 302.302.1(1) requires that a person found to violate ordinance 4356 by running a red light have two points assessed against his or her driving record. On the other hand, ordinance 4536 states that no points' will be assessed. Ordinance 4536 conflicts with state law by prohibiting what state law permits — the assessment of two points for violating ordinance 4536. See Page W., 636 S.W.2d at 67.
*545 Rather than argue that a violation of section 4536 is not a moving violation, the city relies on the language in section 302.302.1 that gives the director of revenue the task of “put[ting] into effect a point system for the suspension and revocation of licenses.” The city contends that this language provides the director with discretion to classify certain offenses as non-point offenses. The city ignores the part of the statute that states “[t]he initial point value is as follows” and establishes an initial point value for a number of offenses. If, as the city contends, the statute places the ultimate authority of determining whether points should be assessed with the director of revenue, then the explicit assignment of point values in the statute would be superfluous. It is presumed that the legislature did not insert superfluous statutory language. Bateman v. Rinehart, 391 S.W.3d 441, 446 (Mo. banc 2013).
The city also argues that it was required, under sections 43.505 and 43.512, RSMo 2000, to not assess any points for a red light camera violation. Section 43.505, RSMo 2000, designates the department of public safety as “the central repository for the collection, maintenance, analysis and reporting of crime incident activity generated by law enforcement agencies in this state” and instructs the department to “develop and operate a uniform crime reporting system.” As the central repository, the department must “publish and make available to criminal justice officials, a standard manual of codes for all offenses in Missouri.” Section 43.512, RSMo 2000. “The manual of codes shall be known as the ‘Missouri Charge Code Manual’, and shall be used by all criminal justice agencies for reporting information required by sections 43.500 to 43.530.” Id.
The “Missouri charge code” is “a unique number assigned by the office of state courts administrator to an offense for tracking and grouping offenses.” Section 43.500(7). It “consists] of digits assigned by the office of state courts administrator, the two-digit national crime information center modifiers and a single digit designating attempt, accessory, or conspiracy.” Id. The Missouri charge code manual for August 2012 to August 2013 contained charge code 9342799.0 for an offense described as “Public safety violation — red light camera (no points)” and indicates that the offense is not reportable to the department of revenue. The city reasons that, because the charge code manual contains a code specifically identifying a red light camera violation as a non-point offense, the more general moving violation catch-all classification in section 302.302.1 must yield to the classification in the charge code.
The city’s argument is premised on there being only one charge code applicable to violations of ordinance 4536. The record only contains a small portion of the charge code manual, and the city fails to show that there are no other charge codes applicable to red light violations. The record also does not include evidence of why the charge code on which the city relies contains a description identifying an offense as a non-point offense or why it indicates that an offense is not reportable to the department of revenue. A charge code is used for “tracking and grouping offenses.” Section 43.500(7). It reports “information required by sections 43.500 to 43.530,” see section 43.512, RSMo 2000, but the city fails to explain how those statutes require the reporting of the number of points assigned to an offense or whether an offense is reported to the department of revenue.
Even if the department of public safety was authorized under sections 43.500 to 43.530 to designate the number of points, if any, to be assessed for a *546 particular violation,[5] the charge code manual cannot trump a statute. See Union Elec. Co. v. Dir. of Revenue, 425 S.W.3d 118, 125-26 (Mo. banc 2014) (holding that when a regulation conflicts with a statute, the statute prevails).[6] Section 302.302.1(1) states that “[pjoints shall be assessed ... as follows: [a]ny moving violation of ... a municipal ... traffic ordinance ... 2 points.” Because a failure to stop at a red light, regardless of whether the violation is detected by an automated enforcement system, is a “moving violation,” as defined by section 302.010(13), it requires the assessment of two points against a violator’s driving record, and the charge code manual is not binding to the extent it states that a red light violation is a no-point offense.[7]
The city further attempts to avoid application of section 302.302.1(1) by arguing that the statutory language stating that the director “shall put into effect a point system” and setting out the point value for each offense is merely directory. Generally, the term “shah” prescribes a mandatory duty but has been interpreted to be directory when the statute does not provide what result will follow for failing to comply with its terms. State v. Teer, 275 S.W.3d 258, 261 (Mo. banc 2009). Section 302.302.1 does not state what results will follow if points are not assessed for an enumerated offense. The absence of a penalty provision, however, does not necessarily prove “shall” is directory. See id. Rather, this Court determines whether “shall” is mandatory or directory by considering the context and ascertaining the legislature’s intent. Id.
The purpose of the point system established in section 302.302 is to protect the public. Rudd v. David, 444 S.W.2d 457, 459 (Mo.1969). This purpose indicates a legislative intent to require the assessment of points for the enumerated offenses because, if the assessment of points were merely discretionary, the point *547 system would do little to protect the public. See also Edwards, 426 S.W.3d at 664; Unverferth, 419 S.W.3d at 97. Therefore, this Court finds that the assessment of two points for moving violations under section 302.302.1(1) is mandatory. By classifying a moving violation as a non-point offense, ordinance 4536 prohibits what state law permits and is in conflict with state law. See Page W., 636 S.W.2d at 67. See also Brunner, 427 S.W.3d at 229; Edwards, 426 S.W.3d at 664-65.
Severance
Notwithstanding the ordinance’s conflict with state law, the city asserts that the trial court erred in dismissing the charge against Ms. Roeder for violating ordinance 4536 because the portion of the ordinance stating no points will be assessed can be severed from the remainder. When an ordinance’s provision is found to be invalid, the Court will not declare the entire ordinance void unless it determines that the municipality would not have enacted the ordinance without the invalid portion.[8] Pearson v. City of Washington, 439 S.W.2d 756, 762 (Mo. 1969). See also State ex rel. City of St. Louis v. Mummert, 875 S.W.2d 108, 109-10 (Mo. banc 1994); Heidrich v. City of Lee’s Summit, 916 S.W.2d 242, 251 (Mo. App. 1995).
In the bill enacting ordinance 4536, the city’s board of aldermen found that a vehicle running a red light “is a serious risk to the public by endangering vehicle operators and pedestrians alike, by decreasing the efficiency of traffic control and traffic flow efforts, and by increasing the number of serious accidents.” The board further determined that use of an automated red light enforcement system had been “proven to significantly improve public safety by reducing the number of red light runners” and that use of such a system in the city was “in the interest of the public health, safety and welfare of the citizens of the City.” The ordinance also contains a sever-ability clause that states:
If any term, condition, or provision of this Ordinance shall, to any extent, be held to be invalid or unenforceable, the *548 remainder hereof shall be in all other respects and continue to be effective and each and every remaining provision hereof shall be valid and shall be enforced to the fullest extent permitted by law, it being the intent of the Board of Aldermen that it would have enacted this Ordinance without the invalid or unenforceable provisions.
The board’s findings demonstrate that the board’s intent in passing ordinance 4356 was to authorize the installation and use of automated red light enforcement systems as a means to enforce its traffic law prohibiting the running of a red light. The portion of ordinance 4586 stating that no points shall be assessed for a conviction for violating the ordinance does not further that purpose, nor is it necessary to enforce the ordinance. Further, the presence of the severability clause weighs in favor of finding that the board would have passed the ordinance without the portion providing for no points. Because the Court cannot determine that the city would not have passed the ordinance without the portion stating no points will be assessed, the Court will not declare the entire ordinance invalid. See Pearson, 439 S.W.2d at 762.
After severing that portion of the ordinance, the ordinance is silent regarding the assessment of points, and two points will be assessed, as required by section 302.302.1.[9] At the time Ms. Roe-der violated the ordinance, however, the ordinance was written to provide that a person violating the ordinance would not be subjected to the assessment of points. “Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.” BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). This notion is partly enforced through the ex post facto prohibition in the United States and Missouri constitutions by preventing the legislature from passing a law that increases the penalty for crime beyond what the law provided when the crime occurred. See State v. Harris, 414 S.W.3d 447, 450 (Mo. banc 2013); see also U.S. Const. art. I, sect. 10 and Mo. Const, art. I, sec. 13. Similarly, Missouri’s constitutional ban against civil laws retrospective in operation prohibits laws that “create[ ] a new obligation, impose[] a new duty, or attache[ ] a new disability with respect to transactions or considerations already past.” Doe v. Phillips, 194 S.W.3d 833, 850 (Mo. banc 2006) (internal quotations omitted). Further, due process requires fair notice of a penalty such that a defendant must be charged with any fact that increases the maximum penalty for a crime.[10] See Ring v. Arizona, 536 U.S. 584, 600, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Such notions of fairness dictate that this Court give effect to the severance and permit enforcement of the remaining valid provisions of ordinance 4536 prospectively only.
The city enacted an ordinance clearly conflicting with state law by providing no points would be assessed when the assessment of points is a direct consequence of a conviction under section 302.302. Though *549 the Court does not find the entire ordinance should be invalidated because the invalid portion can be severed, giving effect to that severance and enforcing the valid provisions in this case would violate Ms. Roeder’s right to fair notice of a direct consequence of her conviction. Severance would lead to Ms. Roeder’s driver’s license being assessed two points when, at the time Ms. Roeder committed the violation, ordinance 4536 expressly stated no points would be assessed. The assessment of two points against Ms. Roeder’s driver’s license creates a disability that is a direct result of her conviction. Because Ms. Roeder did not have fair notice that points would be assessed at the time of the violation, this Court will not give effect to severance and permit enforcement of the valid portions of ordinance 4536 in Ms. Roeder’s case.[11] Without severing the portion of ordinance 4536 stating no points will be assessed, the ordinance conflicts with section 302.302.1 and is void. McCollum, 906 S.W.2d at 369.[12]
Conclusion
Because ordinance 4536 creates a moving violation that requires the assessment of two points against the violator, see section 302.302.1., the portion of the ordinance stating no points will be assessed against a violator’s driving record conflicts with state law. The invalid portion may be severed from the rest of the ordinance because the city would have enacted the ordinance without the invalid portion. Nevertheless, this Court will give effect to that severance and permit enforcement of the valid portions of ordinance 4536 prospectively only because severance in Ms. *550 Roeder’s case would violate constitutional notions of fair notice.[13] Therefore, this Court affirms the trial court’s judgment.
Teitleman and Russell, JJ., and Prokes, Sp.J., concur; Stith, J., concurs in part and in result and concurs in opinion of Draper, J., dissents in separate opinion filed; Wilson, J., dissents in separate opinion filed.
Fischer, J., not participating.

. The city raises four points relied on, but the first two points both assert that the trial court erred in dismissing the prosecution because ordinance 4536 does not conflict with state law regarding points. Therefore, the first two points relied on will be considered together.

. All statutory references are to RSMo Supp. 2012, unless otherwise indicated.

. The notice specifically charged Ms. Roeder with violating city code sections 335.095 and 315.030.

. On reveal, Ms. Roeder does not contest that this evidence shows she entered the intersection after the traffic light turned red.

. The record does not include how the department of public safety determined that a red light camera violation is not assessed points. The city argues that the director of revenue has the authority to determine that no points will be assessed but fails to show that the department of revenue did in fact make such a determination or that the department of public safety obtains information from the director of revenue in compiling the information to be included in the charge code manual.

. The city maintains that in using the no-point charge code, it was acting under advice from the state courts administrator's office. Any advice from the state courts administrator's office does not override state law. Similarly, this Court approves pattern jury instructions to be submitted to juries but such approval does not preclude challenges to the validity of an instruction. When a party proves a pattern instruction does not correctly state the substantive law, submission of the instruction is error. State v. Carson, 941 S.W.2d 518, 520 (Mo. banc 1997).

.Additionally, the city fails to demonstrate that it is bound to follow the charge code manual in passing ordinances. Section 43.512, RSMo 2000, requires all "criminal justice agencies” to use the manual for reporting information. While the statute does not define “criminal justice agencies,” section 43.500(1) defines "administration of criminal justice” as:
[Pjerformance of any of the following activities: detection, apprehension, detention, pretrial release, post-trial release, prosecution, adjudication, correctional supervision, or rehabilitation of accused persons or criminal offenders. The administration of criminal justice shall include criminal identification activities and the collection, storage, and dissemination of criminal history information, including fingerprint searches, photographs, and other unique biometric identification.
Considering the activities that fall within the administration of criminal justice, it seems .unlikely that the city’s board of aldermen acts as a criminal justice agency when it passes a traffic ordinance.

. Section 1.140, RSMo 2000, states:
The provisions of every statute are severa-ble. If any provision of a statute is found ... to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.
Ms. Roeder argues that section 1.140 does not apply because the invalid portion is not unconstitutional but, rather, conflicts with state law. Nonetheless, even if the statute does not apply, it does not prevent this Court from using severance in this case. Section 1.140 was enacted in 1949, and, before that time, the common law doctrine of severability was applied, or at least recognized, in cases in which a provision of the ordinance was found to be in conflict with state law. See State ex inf. McKittrick ex rel. City of Springfield v. Springfield City Water Co., 345 Mo. 6, 131 S.W.2d 525, 532 (1939); Ex parte Tarling, 241 S.W. 929, 933 (Mo. banc 1922); City of St. Louis v. St. Louis Transfer Co., 256 Mo. 476, 165 S.W. 1077, 1079 (1914); City of St. Louis v. Grafeman Dairy Co., 190 Mo. 492, 89 S.W. 617, 619 (1905). The legislature's intent to preempt common law must be clear. Overcast v. Billings Mutual Ins. Co., 11 S.W.3d 62, 69 (Mo. banc 2000). This Court has previously determined that the common law doctrine of severability, rather than section 1.140, applies when the procedure used in enacting a statute was unconstitutional. See Missouri Roundtable for Life, Inc. v. State, 396 S.W.3d 348, 353 (Mo. banc 2013). Section 1.140, does not demonstrate a clear intent to completely preempt the common law doctrine of severability to prevent its use when a provision of an ordinance is found to be invalid due to a conflict with state law.

. It is necessary for an ordinance to expressly address the assessment of points because the assessment of points is governed by section 302.302. For example, the state speeding statute, section 304.010, does not state that points will be assessed for a violation or contain a reference to section 302.302.

. While municipal ordinance violations are quasi-criminal, see Strode, 724 S.W.2d at 247, this Court is informed by these criminal cases.

. In his dissent, Judge Wilson asserts that this Court has previously found points are not a “punishment.” Merely because points are not assessed primarily for punishment does not preclude this Court from finding that due process prohibits assessment of points, a direct and negative effect of a violation of ordinance 4536 when ordinance 4536 expressly notified Ms. Roeder that no points would be assessed. In Barbieri v. Morris, this Court found that a person’s license may be suspended after being found to be a habitual violator of traffic laws based on convictions that occurred before the enactment of the statute defining "habitual violator.” 315 S.W.2d 711, 714-15 (Mo. 1958). The Court noted that the statute was "not retrospective because it merely relate[d] to prior facts or transactions but [did] not change their legal effect.” Id. at 714. Additionally, the Court found that the defendant was "charged with knowledge that if he were again adjudged guilty of a traffic violation ... he would be a ‘habitual violator of traffic laws.’ ” Id. at 715. Here, the assessment of points is not a possible collateral consequence that will occur in the future but is a direct result of Ms. Roe-der’s conviction. Ms. Roeder was not simply uninformed that a violation of ordinance 4536 would have this effect; rather, the ordinance affirmatively stated that points would be not assessed. For this Court to give effect to the ordinance such that points would be assessed against Ms. Roeder’s driving license under these circumstances would not comport with due process, regardless of whether the assessment of points is primarily for punishment.

. In her respondent's brief, Ms. Roeder raises other arguments that were in her motions to dismiss, including: (1) ordinance 4536 conflicts with state law by placing liability on the owner of motor vehicle; (2) the notice of violation creates an implied rebuttable presumption that the owner of the motor vehicle was operating the vehicle at the time of the violation; (3) the city's prosecution of violations of ordinance 4536 violates her right to equal protection under the law; and (4) the city’s process of identifying the operator of the motor vehicle is impermissibly suggestive. The last argument was made in Ms. Roeder’s motion to dismiss the failure to appear charge and not in either of her motions to dismiss the charge for violating ordinance 4536. Therefore, the issue is not before this Court. See Travelers Prop. Cas. Co. of Am. v. Manitowoc Co., 389 S.W.3d 174, 176 (Mo. banc 2013). As to the other arguments, it is unnecessary for the Court to reach these issues because it is affirming the trial court’s dismissal on other grounds.

. In his dissent, Judge Draper opines that this Court should consider Ms. Roeder’s re-buttable presumption argument because the presumption violates due process and would invalidate ordinance 4536. A rebuttable presumption is an evidentiary device and violates due process when it "undermine[s] the fact-finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.” Cnty. Ct. of Ulster Cnty., New York v. Allen, 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (emphasis added). Judge Draper’s dissent accepts Ms. Roeder’s mischaracterization of the notice of violation provisions as applying a rebuttable presumption. While the notice of violation appears not to comply with Rule 37.33 and indicates it is the owner’s responsibility to show who committed the violation, nothing in the language of ordinance 4536 or the notice interferes with the factfin-der's responsibility at trial, and Ms. Roeder fails to show such a presumption was applied at trial. Moreover, while Judge Stith is correct that the ordinance states that evidence of the recorded image will be submitted into evidence at trial, this evidence is as likely to exculpate as to inculpate the driver, and, therefore, does not create an implied presumption that the owner of the vehicle is the driver.