The ROACH LAW FIRM, Respondent,

v.

Norton Y. BEILENSON and Edwards, Schramm, Watkins, Spoeneman, Waltrip & Beilenson, LLP, Appellants.

No. ED 88286.

Missouri Court of Appeals, Eastern District, Division One.

March 6, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 5, 2007.

Application for Transfer Denied June 26, 2007.

Thomas J. Hayek, Julia A. Bruzina, St. Louis, MO, for appellant.

Susan K. Roach, Shaun M. Falvey, Clayton, MO, for respondent.

NANNETTE A. BAKER, Judge.

### *Introduction*

Norton Beilenson ("Beilenson") and Edwards, Schramm, Watkins, Spoeneman, Waltrip & Beilenson, L.L.P. (collectively, "the Defendants") appeal from a judgment of the trial court sustaining the Roach Law Firm's motion for summary judgment on its petition for a declaratory judgment. We reverse and remand with instructions to dismiss the action because Missouri courts have no jurisdiction to consider a declaratory judgment action without a justiciable controversy.[1]

### *Factual and Procedural Background*

On April 26, 2004, Carol and Brian Carrico engaged Beilenson to represent them in their claims against Kipp Lapaglia ("Lapaglia") arising out of an April 8, 2004 automobile accident in which Carol was injured. Carol sustained significant injuries in the collision between her motorcycle and Lapaglia's vehicle. The Carricos signed a contingency fee agreement with Beilenson agreeing to pay thirty-three and a third percent of any settlement amount received or forty percent if recovered after a lawsuit.

On April 27, 2004, Beilenson sent a letter by facsimile to Melanie Brown ("Brown"), the Claim Representative on Lapaglia's policy at State Farm Insurance Company ("State Farm"), informing her that he represented the Carricos in the claim against Lapaglia. The same day, Brown sent a letter to Beilenson acknowledging that State Farm was Lapaglia's insurance carrier and asking for various medical records and bills. On May 22, 2004, Beilenson sent Brown the requested medical bills from St. John's Mercy Medical Center ("St. John's") in the amount of

---

1. This court has reviewed the Motion taken with the case. Respondent's Motion for Damages for Frivolous Appeal is denied.

$99,283.97. Brown agreed to settle the claim for $100,000.00, which was the policy limit of Lapaglia's policy.

On June 3, 2004, Brown sent Beilenson a notarized affidavit from Lapaglia, a full release and a draft for $100,000.00. Lapaglia's affidavit was dated May 28, 2004 and stated, among other things, that the policy limits of his State Farm policy was $100,000.00 per person. The Carricos requested that the language of the release form be modified to preserve any other claim they might have for underinsured motorist coverage against their own insurance company. On June 18, 2004, Beilenson sent a facsimile to Brown requesting that modification. Brown agreed to the change and returned the facsimile noting her approval of the language.

On July 20, 2004, the Carricos sent Beilenson a letter terminating his representation of them for the accident between Lapaglia and Carol. They also requested that their file be sent to the Roach Law Firm. On July 21, 2004, Susan Roach ("Roach") sent a letter to Beilenson informing him that she was now representing the Carricos and requesting that he forward a letter to State Farm advising the insurance company of his withdrawal from the case. Roach also asked Beilenson to provide her an itemized statement of his time expended based on quantum meruit, which she stated she would honor from any ultimate settlement.

On July 29, 2004, Beilenson sent Brown a letter by mail and by facsimile informing her that he was no longer the Carricos' attorney and that he had a lien on any monies payable by State Farm to Carol based on the earlier contract. Beilenson also enclosed the unsigned release form and the unendorsed draft for $100,000.00 that Brown had sent earlier to settle the claim. On July 29, 2004, Brown sent a letter to Carol that acknowledged Carol's termination of Beilenson and informed her that Beilenson was asserting his attorney's lien. Additionally, Brown informed Carol that the settlement offer of $100,000.00 remained open and advised her that the offer represented the liability limits of Lapaglia's policy.

On August 4, 2004, Roach sent Brown a letter advising that she was now representing the Carricos in their claim against Lapaglia and asserting that she had a lien on any money collected by Carol. Roach also stated that she took "strong issue with Mr. Beilenson's claim of a 33.3% lien or in the alternative a 40% lien." On August 10, 2004, Brown sent Roach a letter acknowledging her representation of Carol and stating that State Farm's offer of Lapaglia's policy limits remained open. Brown enclosed a full and final release, stating that upon receipt of the properly executed release, the settlement draft, which would include Beilenson's name, would be sent by return mail.

On August 24, 2004, Brown sent Roach another letter stating that the settlement offer of $100,000.00 remained open. On August 25, Roach sent Brown a letter acknowledging the August 10 letter, stating that her client had a problem with the language of the release. On August 31, 2004, Brown sent Roach a letter with an amended release prepared by State Farm's defense team. On September 10, 2004, Roach sent Brown a letter requesting the release be amended further to release only State Farm and not Lapaglia. Brown replied on September 13, 2004, that State Farm was unable to amend any release that would allow Carol to continue to have a claim against their insured for any amount over and above the policy limits.

On September 15, 2004, Roach filed a Petition for Declaratory Judgment against the Defendants seeking a declaratory judgment that the Defendants waived any

claim for quantum meruit or in the alternative had a claim for quantum meruit only on the Carricos' claim. On November 15, 2004, the Defendants answered the petition and counterclaimed that they were entitled to the contingency fee in question plus costs since Roach got only the identical $100,000.00 settlement offer that Beilenson had obtained.

On March 24, 2005, the Defendants filed a Motion to Dismiss. The Defendants' motion claimed that Roach Law Firm's petition failed to state a claim since no justiciable controversy existed because the Carricos' underlying personal injury case had not yet been resolved. On June 8, 2005, the trial court denied the Defendants' motion to dismiss.

On October 31, 2005, Roach Law Firm filed a Motion for Summary Judgment. The Defendants filed a Motion for Summary Judgment on March 28, 2006. On May 18, 2006, the trial court sustained Roach Law Firm's motion for summary judgment and denied the Defendants' motion for summary judgment. This appeal followed.

### Discussion

Before we can consider the merits of this appeal, we must consider *sua sponte* our jurisdiction to do so. *Gov't e-Mgmt. Solutions, Inc. v. Am. Arbitration Ass'n, Inc.*, 142 S.W.3d 857, 860 (Mo.App. E.D.2004). Because our jurisdiction is predicated on that of the trial court, if the trial court lacked jurisdiction over this action, then any judgment entered thereon would be void, depriving us of jurisdiction except to reverse the judgment and remand the cause for dismissal by the trial court. *Id.* If the trial court lacked jurisdiction to enter the judgment on which review is sought, then we lack jurisdiction to review it on the merits. *Shelton v. Shelton*, 201 S.W.3d 576, 579 (Mo.App. W.D.2006). Even if not raised by a party, we may examine subject matter jurisdiction *sua sponte*. *Jew v. Home Depot USA, Inc.*, 126 S.W.3d 394, 397 (Mo.App. E.D. 2004).

There are four requirements for a declaratory judgment petition. *Grewell v. State Farm Mut. Auto. Ins. Co.*, 102 S.W.3d 33, 36 (Mo. banc 2003). In addition to demonstrating that a justiciable controversy exists, it is required that there is a legally protected interest directly at issue, that the question presented is ripe for judicial determination, and that the petitioner does not have an adequate remedy at law. *Id.*

A justiciable controversy exists where the plaintiff has a legally protectable interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination. *George v. Brewer*, 62 S.W.3d 106, 109 (Mo.App. S.D.2001). The existence of a justiciable controversy is essential before a court may exercise its jurisdiction in response to a petition for declaratory judgment. *Id.* at 110. Where there is no justiciable controversy, it is an abuse of discretion for the trial court to undertake a declaratory judgment action. *Id.*

In the case before us, no money has been paid to Carol on her claim against Lapaglia. The Roach Law Firm's petition alleges that it "seeks a declaratory judgment regarding the respective interests of [Roach Law Firm] and [Beilenson, et al.] regarding attorneys [sic] fees pertaining to the offer of settlement made by [State Farm] to Ms. Carol Carrico." The Carricos refused to sign State Farm's waiver accompanying the settlement draft procured by either Beilenson or by Roach. Accordingly, State Farm declined to release any money to the Carricos.

It is sheer speculation whether Carol will collect any money on this claim. Carol

might decide to file a lawsuit in lieu of accepting a settlement, and could lose her case, thereby collecting no money on which the payment of attorneys' fees would be due. The petition, and the evidence adduced in support of it, constitutes a mere request for an advisory opinion.

Roach's petition fails to state a claim upon which declaratory relief may be granted because it fails to state facts showing the existence of a justiciable controversy admitting of specific relief. Therefore the trial court had no jurisdiction to grant the Roach Law Firm's motion for summary judgment.

We reverse the judgment of the trial court and remand with instructions to dismiss the action.

CLIFFORD H. AHRENS, P.J., and MARY K. HOFF, J., concur.