

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| CITY OF ST. JOSEPH, MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD78450 |
| | ) | |
| v. | ) | Opinion filed:  November 3, 2015 |
| | ) | |
| DEWAYNE A. LEER, | ) | |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI**
**THE HONORABLE DANIEL F. KELLOGG, JUDGE**

Before Division Three:  Joseph M. Ellis, Presiding Judge,
Gary D. Witt, Judge and Zel M. Fischer, Special Judge

Dewayne Leer appeals from a judgment entered in the Circuit Court of Buchanan County, following trial *de novo*, finding him guilty of violating two of the City of St. Joseph's non-smoking ordinances, §§ 17-335 and 17-337,[1] and fining him $100 for each of those violations as authorized by § 17-338.  For the following reasons, the judgment is affirmed.

Appellant and his wife own Uncle D's Sports Bar & Grill, a restaurant and bar located in St. Joseph, Missouri.  In addition to serving food and alcohol, Uncle D's has two coin operated pool tables, four other coin operated games, and dart boards for its patrons to use.

---

[1] All section references are to the City of St. Joseph Code of Ordinances unless otherwise noted.

On August 21, 2014, an enforcement officer with the City Health Department issued a citation to Appellant for allowing smoking inside Uncle D's in violation of city ordinance § 17-337. On August 29, 2014, an officer cited Appellant for having "ashtrays at the bar with ashes inside" in violation of § 17-335. At trial, Appellant admitted that he allows smoking at Uncle D's.

In defending against the charges, Appellant filed motions to have the charges dismissed. Appellant maintained that the ordinances he was charged with violating did not apply to Uncle D's because it is a "billiard parlor" and that billiard parlors had been deemed not to be a "public place" in a previously enacted 1993 article limiting smoking in public places ("the 1993 Article").[2] In the alternative, he argued that the ordinances are unconstitutional special laws because the 2014 no-smoking article under which he was charged ("the 2014 Article")[3] improperly exempts casino gaming areas and grants a special privilege to the local casino. He further contended that the 2014 Article was unconstitutional because an ordinance provision provides that the casino gaming area exemption would end if smoking were banned at all other non-Native American casinos in the region, improperly delegating to other governmental entities in the region the legislative power to ban smoking in St. Joseph casino gaming areas.

After the municipal judge denied Appellant's motions to dismiss, found him guilty of both offenses, and fined him a total of $300, Appellant requested a trial *de novo* in the circuit court. The circuit court denied Appellant's motions to dismiss without making

---

[2] The 1993 Article is entitled "Smoke Free Air in Certain Areas in Public Places." It required designated smoking areas in public places and limited such areas to no more than 30% of the space. *§ 17-162*.
[3] The 2014 Article is entitled "Smoke-Free Indoor Air Workplaces and Public Places." It prohibited smoking entirely in enclosed public places. *§ 17-328*.

2

any findings of fact or conclusions of law. Appellant was tried by the court and found guilty as charged. The circuit court fined him $100 for each of the two violations.

Appellant brings four points on appeal from that judgment, all of which challenge the trial court's decision not to dismiss the charges against him. Ordinarily, "[w]e review the trial court's ruling on a motion to dismiss for an abuse of discretion." *City of Columbia v. Henderson*, 399 S.W.3d 493, 494 (Mo. App. W.D. 2013). "A trial court abuses its discretion when its decision is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id*. (internal quotation omitted). However, where the trial court's decision regarding whether to dismiss a criminal charge turns on a question of law, as it does when it involves a question of statutory construction, our review is *de novo*. *Id*.

In his first point, Appellant claims that the trial court erred in denying his motion to dismiss because Uncle D's is a "billiard parlor" and, therefore, not a "public place" for the purpose of smoking ordinances in St. Joseph. He bases this argument on language contained in the 1993 Article which required smoking to be limited to certain, designated areas in public places. Section 17.163 of that article provides, in relevant part: "The following areas are not considered public places: . . . (5) Bars, taverns, restaurants that seat less than 50 people, bowling alleys and billiard parlors, which conspicuously post signs stating that nonsmoking areas are unavailable." Appellant maintains that, because the 1993 Article was not repealed, the provisions contained therein related to what is and is not a "public place" should be applied to the 2014 Article. He argues the

dictionary defines "billiard parlor" as "a room in which billiards is played" and that, because billiards is played in his establishment, Uncle D's qualifies as a billiard parlor.

Even were we to accept Appellant's dubious contention that the plain language of § 17.163 exempts from the 1993 Article any establishment with a pool table in use,[4] the 2014 Article clearly provides its own definitions for "public place" and "place of employment" and specifically sets out what establishments are exempt from its provisions. A "public place" is defined as "an area to which the public is invited or in which the public is permitted, including but not limited to, banks, *bars*,[5] educational facilities, health care facilities, hotels and motels, laundromats [sic], public transportation vehicles and facilities, recreation areas, *restaurants*,[6] retail food production and marketing establishments, retail stores, shopping malls, sporting arenas, theaters, and waiting rooms." *§ 17.326(11)* (emphasis added). A "place of employment" is defined as "an area under the control of a public or private employer, including, but not limited to, work areas, private offices, employee lounges, restrooms, conference rooms, meeting rooms, classrooms, employee cafeterias, hallways, construction sites, temporary offices, and vehicles." *§ 17.326(10)*.

---

[4] We gratuitously note that Appellant's argument that, pursuant to the 1993 Article, any type of building or business in which billiards is played is exempted from its provisions, regardless of the principle nature of the business or the percentage of the business that is related to billiards, is without merit. Pursuant to that argument, under the 1993 Article, any health care facility, nursing home, hospital, school, airport, gymnasium, recreation center, retail store, or shopping mall that had a pool table that people occasionally played would have to be considered a "billiard parlor" and, therefore, not a "public place" for purposes of the 1993 Article even though such facilities are specifically listed in the 1993 Article as being "public places." *§ 17-207*. The clear intent of the city council was merely to exempt businesses centered upon the play of billiards.

[5] A "bar" is defined as "an establishment that is devoted to the serving of alcoholic beverages for consumption by guests on the premises, including but not limited to, taverns, nightclubs, cocktail lounges, and cabarets." *§ 17.326(1)*.

[6] A "restaurant" is defined as "an eating establishment, including but not limited to, coffee shops, cafeterias, sandwich stands, and private and public school cafeterias, which gives or offers for sale food to the public, guests, or employees, as well as kitchens and catering facilities in which food is prepared on the premises for serving elsewhere." *§ 17.326(12)*.

4

Section 17.328 provides that smoking is prohibited in all enclosed public places including, specifically, all bars and restaurants. Section 17-329 states that "[s]moking shall be prohibited in all enclosed places of employment, except as may be otherwise provided in Section 17-332 of this article." Section 17-332, entitled "Where smoking not regulated," provides:

> Notwithstanding any other provisions of this article to the contrary, smoking shall not be prohibited in the following areas:
>
> (1) Private vehicles or private residences, unless they are used as a childcare, adult day care, or health care facility;
> (2) Not more than 10% of hotel and motel sleeping rooms rented to guest and designated as smoking rooms. . . .
> (3) Membership clubs that have no employees present, except when being used for a function to which the general public is invited; provided that smoke from such clubs does not infiltrate into areas where smoking is prohibited under the provisions of this ordinance. . .
> (4) Casino gaming areas as defined by this ordinance.

Overwhelming evidence was presented that Uncle D's is a "bar," "restaurant," and "place of employment" as those terms are defined in the 2014 Article, and none of the exemptions contained in § 17-332 are applicable to it.

Appellant, quoting *State ex rel Miller v. Crist*, 579 S.W.2d 837, 838 (Mo. App. W.D. 1979), argues that "'[a] statute dealing with a subject generally will rarely have the effect of repealing by implication, either wholly or partially, an earlier statute which deals with a narrower subject in a particular way.'" Appellant then claims that the 1993 Article is a piece of specific legislation that should control over the 2014 Article which was a general piece of legislation. In making this argument, Appellant mischaracterizes the 1993 Article as a piece of specific legislation. Both the 1993 and 2014 Articles seek to comprehensively dictate where smoking is prohibited within St. Joseph. The fact that the 2014 Article prohibits smoking in more places and to a greater extent than the 1993

5

Article does not somehow make the 1993 Article a piece of "specific legislation" that should control over the 2014 Article.

Both the 1993 Article and the 2014 Article contain their own definition of "public place." Indeed, the 2014 Article specifically provides that all restaurants and bars are public places, *§ 17.326*, while the 1993 Article clearly provides that restaurants that seat fewer than 50 people and all bars[7] are not "public places" if they post the requisite signage. *§ 17-163*.[8] The definitional ordinance in both of the articles makes clear that the definitions for the words and phrases provided therein are to apply when used in that particular article. *§ 17.161*; *§ 17.326*. Furthermore, both articles contain ordinances setting out specific places that are exempt from their provisions -- with the 1993 Article exempting some places not exempted by the 2014 Article and the 2014 Article exempting some places not exempted by the 1993 Article. *See § 17-332*; *§ 17.163*. The definitions and exemptions contained in the 1993 Article are simply

---

[7] The definition of what qualifies as a bar is more limited in the 1993 Article than in the 2014 Article in that it was limited to establishments where no more than 10% of the gross sales receipts were provided by food purchases. *§ 17-161*.

[8] Section 17-163 provides, in its entirety:

> The following areas are not considered public places:
>
> (1) An entire room or hall which is used for private social functions, provided that the seating arrangements are under the control of the sponsor of the function and not of the proprietor or other person in charge;
> (2) Limousines for hire and taxicabs, where the driver and all passengers agree to smoking in such vehicle;
> (3) Performers on the stage, provided that the smoking is part of the production;
> (4) A place where more than 50 percent of the volume of trade or business carried on is that of the blending of tobaccos or sale of tobaccos, cigarettes, pipes, cigars or smoking sundries;
> (5) Bars, taverns, restaurants that seat less than 50 people, bowling alleys and billiard parlors, which conspicuously post signs stating that nonsmoking areas are unavailable;
> (6) Private residence; and
> (7) Any enclosed outdoor arena, stadium or other facility which may be used for sporting events and which has a seating capacity of more than 15,000 people.

inapplicable to the 2014 Article which has its own definitions and exemptions.[9] *See*

*State v. Beck*, 167 S.W.3d 767, 779 (Mo. App. W.D. 2005) (overruled in unrelated part

in *State v. Banks*, 434 S.W.3d 100, 104 (Mo. banc 2014) (noting that where a term or

phrase is defined in a statutory chapter, that definition controls in the application of the

statutory provisions contained in that chapter); *State v. Bristow*, 190 S.W.3d 479, 485

(Mo. App. S.D. 2006) ("[T]he legislature's own construction of its language by means of

definition of the terms employed should be followed in the interpretation of the statute to

which it relates.") (internal quotation omitted).

Appellant was charged with violating ordinances contained in the 2014 Article,

and in light of the definitions and exemptions contained therein, Uncle D's is clearly a

"public place" for the purposes of that article as it is a "restaurant," "bar," and "place of

employment" under the provisions of that article.  Even if Uncle D's could also be

considered to be a billiard parlor, the 2014 Article does not contain a billiard parlor

exemption.  Accordingly, the trial court did not err in declining to dismiss the charges

against Appellant based upon his claims that Uncle D's is a billiard parlor.  Point denied.

Appellant's remaining points on appeal challenge the constitutionality of various

aspects of the 2014 Article.  In his second point, Appellant contends that the trial court

erred in refusing to dismiss the charges against him because the exemption of "casino

gaming areas" from the 2014 Article is unconstitutional in that it violates Article III, §

40(28) of the Missouri Constitution by granting the local casino, the St. Jo Frontier

Casino, special privileges and immunities by exempting casino gaming areas from its

smoking restrictions.  In his third point, Appellant argues that the trial court erred in

---

[9] While Appellant attempts to make much of the fact that the 1993 Article was not repealed by the city council, the reason for not repealing it would seem to be simply to continue to regulate places like "casino gaming areas" that were subject to the 1993 Article but are exempted from the 2014 Article.

failing to dismiss the charges against him because the exemption for "casino gaming areas" in the 2014 Article is unconstitutional because it violates Article III, § 40(30) of the Missouri Constitution by creating a special law where a general law could be made applicable. In his final point, Appellant claims that the court erred in not dismissing the charges against him because the 2014 Article is unconstitutional because it contains a provision providing casino gaming areas will only remain exempt from the article "until smoking within the casino areas where gambling games are allowed is prohibited by ordinance, statute or law in all non-Native American casinos located in the Missouri counties of Jackson, Platte and Clay, and the Kansas counties of Johnson and Wyandotte."[10] He argues that this provision unconstitutionally delegates the legislative power of the City of St. Joseph to other bodies in violation of Article VI, § 19(a) of the Missouri Constitution.

We need not address whether any of Appellant's constitutional arguments have merit, however, because the challenged provisions in the 2014 Article have no bearing on the charges against him and, if found to be unconstitutional, the challenged

---

[10] With regard to the exemption for casino gaming areas, § 17-333 provides:

> Casino gaming areas shall be exempt from this article until smoking within the casino areas where gambling games are allowed is prohibited by ordinance, statute, or law in all non-Native American casinos located in the Missouri counties of Jackson, Platte and Clay, and the Kansas counties of Johnson and Wyandotte (the relevant counties). To determine when casino gaming areas are no longer exempt from this article as described above:
>
> (1) The city clerk with the advice of the city manager will maintain a library of smoking ordinances from all cities that have casinos located within their corporate limits in the relevant counties.
> (2) When smoking within casino gaming areas has been banned in those jurisdictions in which casinos are located in the relevant counties, the city clerk shall provide for public notice through the city's internet site, news releases and a communication to the city council.
> (3) Such notice shall state that smoking shall be prohibited in casino gaming areas 60 days from the date of the public notice.
> (4) The provisions of this section shall not become effective until 60 days from the date of the public notice.

8

provisions would be severable from the remainder of the article. Accordingly, Appellant's convictions would remain unaffected regardless of how we might decide the constitutional questions.

All legislation is to be upheld to the fullest extent possible and is presumed to be severable. **General Motors Corp. v. Director of Revenue**, 981 S.W.2d 561, 568 (Mo. banc 1998). "When an ordinance's provision is found to be invalid, the Court will not declare the entire ordinance void unless it determines that the municipality would not have enacted the ordinance without the invalid portion."[11] **City of St. Peters v. Roeder**, 466 S.W.3d 538, 547 (Mo. banc 2015).

There can be no doubt that the removal of the provisions of the 2014 Article that have been challenged by Appellant related to casino gaming areas would leave a law that is complete and susceptible of constitutional enforcement. Indeed, Appellant appears to concede as much, arguing only that the article would not have been enacted without the provisions related to casino gaming areas.

The 2014 Article was voted on and approved by the voters of the City of St. Joseph. While Appellant argues that the voters would not have enacted the 2014 Article without the provisions related to casino gaming areas, § 17.341 of that article specifically provides:

> If any provision, clause, sentence, or paragraph of this article or the application thereof to any person or circumstances shall be held invalid, that invalidity shall not affect the other provisions of this article which can

---

[11] *See 82 C.J.S. Statutes § 113* at 138 ("[T]o determine the appropriate remedy for a constitutional flaw in a statute, a court, after finding that portion of the statute is unconstitutional, must next inquire whether the legislature would have preferred what is left of the statute to no statute at all. In other words, the courts must seek to ascertain whether the legislature would have enacted the particular bill without the unconstitutional provision or whether, in the absence of the unconstitutional provision, the legislature would have preferred that the bill have no effect at all.")

9

be given effect without the invalid provision or application, and to this end the provisions of this article are declared to be severable.

*§ 17.341*.  Thus, in approving the 2014 Article, the voters clearly stated their intent that the article remain in effect even if one or more provisions thereof were held to be invalid.  *See **Missouri Pac. R. Co v. Morris***, 345 S.W.2d 52, 60-62 (Mo. banc 1961) (holding that a severability clause reflected an intent by the legislature that the remainder of the Use Tax Law should survive even if one or more exemptions contained therein were found invalid).

Moreover, viewing the casino gaming area provisions together with each other, the 2014 Article reflects a desire by the voters that smoking be banned in casino gaming areas, though it delays the implementation of such a ban until other communities in the area have similarly banned smoking in their casinos.  We simply cannot conclude that the delay in the implementation of such a ban was so integral to 2014 Article that it is likely that the voters would not have approved the 2014 Article without it.

Appellant attempts to rely upon *Paul Stieler Enterprises Inc. v. City of Evansville*, 2 N.E.3d 1269, 1278-79 (Ind. 2014), as support for the proposition that an unconstitutional exemption of casinos from a smoking ordinance is not severable from the smoking ordinance as whole.  Appellant selectively omits from his analysis, however, the fact that the court in that case noted that a 2006 smoking ban had included a severability clause and that the 2012 amending ordinance at issue in the case did not contain such a provision, "thus raising the presumption that the Council intended the latter to be effective in its entirety or not at all."[12]  *Id*. at 1279.  He further

---

[12] The court in *Paul Stieler Enters. Inc. v. City of Evansville*, 2 N.E.3d 1269, 1279 (Ind. 2014), noted: "The

10

omits the fact that the city in that case conceded that it was unlikely that the 2012 amending ordinance would have passed without the riverboat casino exemption and that comments from city council members in the city council minutes supported such a conclusion. *Id.* The court found that, based upon the evidence presented, the city council clearly did not intend for the 2012 amending ordinance to stand if the casino exemption were held to be invalid. *Id.* That case is simply not on point.

*Hug v. City of Omaha*, 749 N.W.2d 884 (Neb. 2008), is much more in line with the case at bar. In *Hug*, the Nebraska Supreme Court concluded that exemptions from a city smoking ordinance for standalone bars, keno establishments, horseracing simulcasting locations, and tobacco retail outlets were unconstitutional special laws under Nebraska law. *Id.* at 890-91. The court held, however, that those exemptions were severable from the remainder of the smoking ordinance under a severability provision identical, word for word, to the one at issue in this case and that the remaining provisions of the smoking ordinance continued to have full force and effect. *Id.* at 891.

Similarly, we hold that, even if this Court were to find that one or more of the casino gaming area provisions in the 2014 Article was unconstitutional and, therefore, void, those provisions would be severable from the article as a whole pursuant to § 17.341. Since those provisions would be severable, the provisions under which Appellant was convicted would remain unaffected by any determination we might make regarding their constitutionality. Accordingly, the arguments presented in his second, third, and fourth points cannot possibly support a finding that the trial court erred in failing to dismiss the charges against Appellant. Points denied.

inclusion of a severability clause creates a presumption that the remainder of the Act may continue in effect. The absence of a severability clause creates the opposite presumption: the Legislature intends the Act to be effective as an entirety or not at all." *Id.*

The judgment is affirmed.

_____
Joseph M. Ellis, Judge

All concur.