The **TROPHY ROOM,**
et al., Appellants,

v.

**CITY OF ST. LOUIS, Respondent.**

**ED 104714**

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: September 19, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied
October 23, 2017

Application of Transfer Denied
December 19, 2017

John Steward & Elkin Kistner, for appellant.

Brent Dulle & Mark Lawson, for respondent.

Lisa P. Page, Judge

The City of St. Louis Smoke Free Air Act of 2009[1] ("Ordinance") prohibits smoking in public places and places of employment through the City of St. Louis ("City"), but exempts certain places or facilities from that prohibition. The issues presented in this appeal are whether the Ordinance prohibits smoking in The Trophy Room, Inc. ("Trophy Room") and, if it does, whether the prohibition is constitutional. We affirm.

## BACKGROUND

The facts of this matter are not disputed. In November 2009, by a vote of 20-7, the City's Board of Aldermen[2] approved the Ordinance.

---

1. The City of St. Louis Smoke Free Air Act of 2009 was labeled "Ordinance #68481" and is codified at sections 11.31.010–11.13.130 in the City of St. Louis Revised Ordinances and Code.

2. The Board of Aldermen is the legislative branch of the City's local government.

## A. The City of St. Louis Smoke Free Air Act of 2009

The Ordinance at issue was enacted for the broad and explicit purposes of protecting the public health of the City and enhancing the promotion of "a smoke free city through the elimination of the presence of secondhand smoke in public places and in the workplace[.]" *See* Ordinance 68481. Comprised of sixteen separate sections, the Ordinance broadly prohibits smoking in St. Louis City. Specifically, Section 4 of the Ordinance unequivocally prohibits smoking in "all enclosed public places within the City of St. Louis," including, but not limited to:

\* \* \*

3. Bars, except where smoking is not regulated as defined in Section Seven.

4. Bingo facilities.

\* \* \*

9. Gaming facilities, except casino gaming areas as outlined in Section Seven.

\* \* \*

16. Restaurants.

\* \* \*

*Id.* at § 4.

Limited and narrow exceptions to the Ordinance's prohibition on smoking are set forth in Section 7. *Id.* at § 7. One exemption allows for smoking in "[b]ars in existence on the effective date of the ordinance in which only persons aged twenty one (21) years or older are permitted to enter the premises," and the square footage of said bar was 2000 square feet or less. *Id.* at § 7 ¶ 7 (hereinafter, "Bar Exemption"). However, the Bar Exemption expired five years after the effective date of the Ordinance. *Id.* Another Section 7 exemption exists for "casino gaming areas," which does not expire. *Id.* at § 7 ¶ 6.

Section 2 of the Ordinance sets forth fifteen definitions for words and phrases employed therein. *Id.* at § 2. The Ordinance defines "casino gaming areas" as "the area of a state-licensed gambling facility where gaming is allowed for those 21 years of age or older, including any VIP lounge, accessible only through the game floor, whether or not gaming is allowed in the VIP lounge." *Id.* at § 2 ¶ 3. "Public place" is defined as "an enclosed area to which the public is invited or in which the public is permitted, including but not limited to, banks, bars, educational facilities, gaming facilities, health care facilities . . . restaurants . . . and waiting rooms." *Id.* at § 2 ¶ 9.[3] "Bar" is defined as "an establishment that is devoted to the serving of alcoholic beverages for consumption by guests on the premises and in which the serving of food is only incidental to the consumption of those beverages, including but not limited to, taverns, nightclubs, cocktail lounges, and cabarets." *Id.* at § 2 ¶ 1.

Failure of a public place or place of employment to abide by the Ordinance may result in a $100 fine for the first violation, a $200 fine for the second violation, and a $500 fine for each ensuing violation. *Id.* at § 12. Furthermore, in addition to the prospect of these fines, a violation of the Ordinance may also result in the suspension or revocation of any other permit or licenses issued by the City. *Id.*

The Ordinance incorporates a severability provision in Section 14, which reads:

The sections, conditions, and provisions of this Ordinance or portions thereof shall be severable. If any section, condition, or provision of this Ordinance or portion thereof contained herein is held invalid by the court of competent juris-

---

3. The Ordinance lacks a definition for "gam- ing facility."

diction, such holding shall not invalidate the remaining sections, conditions, or provisions of this Ordinance.

*Id.* at § 14.

Finally, Section 16 of the Ordinance (hereinafter, "Sunset Provision") provides for an immediate elimination of the "casino gaming area" exemption set forth in Section 7. *Id.* at § 16. Section 16 reads, *in toto*, as follows:

> In the event that St. Louis County, and St. Charles County or the City of St. Charles, or the State of Missouri pass ordinances prohibiting smoking in casino gaming areas, the exemption to the smoking regulation contained in Section Seven herein shall be rescinded. Provided, however, that if and when smoking is allowed in casino gaming areas in either Madison or St. Clair Counties, in Illinois, the exemption to the smoking regulation contained in Section Seven herein shall be allowed.

*Id.*

Upon the Mayor's execution, the Ordinance became effective on January 2, 2011. Accordingly, the Bar Exemption expired on January 2, 2016.

## B. Trophy Room

Incorporated under the laws of Missouri in July 1997, the Trophy Room is a small bar located at the corner of Arsenal Street and Brannon Avenue in south St. Louis City. Herbert Krischke ("Krischke") has been the president of the Trophy Room since its incorporation. Krischke continues to own, manage, and operate the establishment. The Trophy Room is open to the public for 21 hours per day Monday through Saturday and for 16 hours on Sundays.

Patrons of the Trophy Room may partake in a wide variety of alcoholic beverages, a limited assortment of food, and entertainment (jukebox, pinball, darts, and pool table). Since its inception in 1997, the Trophy Room has always permitted its patrons to smoke.[4] Additionally, at the time of the litigation, only those patrons 21 years of age or older were permitted on the premises of the Trophy Room.

Pursuant to the Bar Exemption, Trophy Room submitted an application and was exempted from complying with the smoking ban until January 2, 2016. In December 2015, Trophy Room attempted to pursue a "casino gaming area" exemption by applying for a license from the Missouri State Lottery Commission to operate "Club Keno"[5] in order to avoid compliance with the smoking ban. The license was granted. Trophy Room was required to properly train certain employees, as well as install certain equipment (video monitors, Club Keno cards, Club Keno machines, etc.).

## C. Procedural History

On December 24, 2015, a mere week before its Bar Exemption was to expire, Trophy Room sought declaratory and injunctive relief against the City in its Second Amended Petition, contending that it met the definition of "casino gaming area" under the Ordinance (Count I). Specifically, Trophy Room claimed that simply being granted a Club Keno license by the Missouri State Lottery Commission conferred "casino gaming area" status upon the establishment, so as to permanently avoid the smoking ban.

---

**4.** Krischke testified that between 70% and 85% of Trophy Room's customers routinely smoke in the establishment.

**5.** As discussed in greater detail, *infra*, the Missouri State Lottery Commission administers and regulates Club Keno licenses.

In the alternative, Trophy Room sought a declaratory judgment arguing the *entire* Ordinance was unconstitutional. Specifically, Trophy Room asserted the Ordinance contravened certain sections of the Missouri Constitution in that: (1) the Ordinance violated the Privileges and Immunities Clause of the Missouri Constitution (Count III); (2) the Ordinance violated the Special Laws Clause the Missouri Constitution (Count V); (3) Section 16 of the Ordinance, the Sunset Provision, was void for vagueness (Count VII); and (4) Section 16 of the Ordinance, the Sunset Provision, was an unlawful delegation of legislative authority (Count VIII).[6]

After Trophy Room's Second Amended Petition was presented on stipulated facts and the testimony of Krischke, the trial court entered its Judgment, Order and Decree ("Judgment") in favor of the City on Counts I, III, and V, and dismissed Counts VII and VIII for lack of a justiciable controversy.

This appeal follows.

## DISCUSSION

Trophy Room advances five points on appeal. A comprehensive introduction of each point will be addressed in greater detail throughout our analysis. Briefly, Trophy Room's points are as follows:

(I) the trial court erred in determining Trophy Room is not a "casino gaming area;"

(II) & (III) the trial court erred in concluding the Ordinance was not a "special law;"

(IV) & (V) the trial court erred in dismissing Counts VII and VIII of Trophy Room's Petition, because Section 16 of the Ordinance, the Sunset Provision, is

based upon an unconstitutional delegation of legislative authority and violates the due process clause of the Missouri Constitution.

## Point I—Trophy Room is not a "Casino Gaming Area"

In Point I, Trophy Room argues the trial court erred in finding Trophy Room is not a "casino gaming area" as defined by the Ordinance.

### *Standard of Review*

In a court-tried case, the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Century Motor Corp v. FCA US LLC*, 477 S.W.3d 89, 94 (Mo. App. E.D. 2015). We apply *de novo* review to questions of law decided in court-tried cases. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

### *Analysis*

The crux of Trophy Room's first point on appeal rests entirely upon the interpretation and application of the "casino gaming area" exemption set forth in the Ordinance. If the "casino gaming area" exemption is applicable to Trophy Room, then Trophy Room shall be authorized to permit smoking. However, if Trophy Room is merely a proscribed entity and does not meet the terms of the "casino gaming area" exemption, then smoking shall be prohibited.

### A. Canons Governing Interpretation of the Ordinance

In determining the scope of the "casino gaming area" exemption, this court is guid-

---

**6.** Counts VII and VIII of Trophy Room's Second Amended Petition both sought a Declaratory Judgment. Counts II, IV, and VI of Tro-
phy Room's Second Amended Petition sought injunctions against the City; those counts are not relevant to this appeal.

ed by our canons of statutory interpretation. *City of Univ. City v. AT&T Wireless Servs.*, 371 S.W.3d 14, 18 (Mo. App. E.D. 2012) (an ordinance is interpreted using the same canons as employed when interpreting state statutes). The cardinal rule for construing ordinances is to ascertain and give effect to the intent of the enacting legislative body as reflected in the plain and ordinary meaning of the language of the ordinance. *Tupper v. City of St. Louis*, 468 S.W.3d 360, 371 (Mo. banc 2015). Accordingly, "[i]f the ordinance is clear and unambiguous when the terms used are given their legislative definition or the plain and ordinary meaning, then there is no room for construction and the courts must give effect to the statute as written." *Cousin's Adver., Inc. v. Bd. of Zoning Adjustment of Kansas City*, 78 S.W.3d 774, 779 (Mo. App. W.D. 2002).

## B. "Casino Gaming Areas"

The Ordinance broadly and unequivocally bans smoking in "all enclosed public places within the City of St. Louis," including, but not limited to, 23 entities enumerated in Section 4, in accord with its explicit legislative purpose to protect the public health in the City and enhance the promotion of "a smoke free city though the *elimination* of the presence of secondhand smoke in public places and in the workplace[.]" *See* Ordinance 68481. Yet, antithetically, the Ordinance narrowly exempts seven discrete and limited entities from the smoking ban. *See* Ordinance 68481 at § 7. Relevant to this matter, one such exemption was granted to "casino gaming areas," which are defined by the Ordinance as "the area of a state-licensed gambling facility where gaming is allowed for those 21 years of age or older, including any VIP lounge, accessible only through the game floor, whether or not gaming is allowed in the VIP lounge." *Id.* at § 2 ¶ 3 (emphasis added).

▮ We agree with Trophy Room that the Ordinance provides a "mandatory, clear[,] and unambiguous" definition for "casino gaming area." However, we disagree with Trophy Room's bald assertion that this establishment meets the definition of a "state-licensed gambling facility," by singular virtue of a Club Keno license issued by the Missouri State Lottery Commission. Such an interpretation of the term "casino gaming area" would produce an absurd result. *Keeney v. Hereford Concrete Prods., Inc.*, 911 S.W.2d 622, 624 (Mo. banc 1995) ("Where the language of the statute is unambiguous, courts must give effect to the language used by the legislature. Courts lack the authority to read into a statute a legislative intent contrary to the intent made evident by the plain language[,] ... even when the court may prefer a different policy from that enunciated by the legislature.") (internal citations and quotation marks omitted) *see also State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000).

Any and all state licensure of "gambling" is solely regulated under the auspices of Chapter 313 of the Missouri Revised Statutes, entitled "Licensed Gaming Activities." This chapter governs and regulates the licensed *gaming* industry of this State. *See* Daniel T. Murphy and Jack M. Epps, *Riverboat Gaming Development in Missouri*, 53 J. Mo. B. 15, 16 (1997). Under the auspices of Chapter 313, the Legislature has established two separate and independent commissions to regulate the gaming industry of this State: (1) the Missouri State Lottery Commission ("Lottery Commission"); and (2) the Missouri State Gaming Commission ("Gaming Commission"). *Id.*

▮ The Lottery Commission, Sections 313.200 through 313.350, was established

for the purposes of "control[ling] and manag[ing] the state lottery." Section 313.210. Games of bingo, keno, numbers tickers, pull tab, jar ticket, push card, and punch board are "lotteries," within the purview of the Missouri Constitution, and governed by the Lottery Commission when not operated upon an "excursion gambling boat." *See, generally, Harris v. Mo. Gaming Comm'n*, 869 S.W.2d 58 (Mo. banc 1994). The Lottery Commission does not regulate, govern, or even make reference to a "state-licensed gambling facility." The Lottery Commission's duty is to license and regulate lotteries in various locations throughout the State when not conducted upon an "excursion gambling boat"—which is currently the only state regulated *facility* where all forms of legal gambling are permitted.

Specifically, the Gaming Commission regulates and administers Excursion Gambling Boats (Section 313.800–313.850), via the Gambling Division (Section 313.004.4). "Excursion gambling boat" is defined as "a boat, ferry or other floating *facility licensed* by the [Gaming] commission on which gambling games are allowed." *See* Section 313.800.1(9) (emphasis added); *see also* Section 313.800.1(11) (" **'Floating facility'**, any facility built or originally built as a boat, ferry or barge licensed by the commission on which gambling games are allowed"). The Gaming Commission also oversees the lawful operation of the following licensed games: (1) Bingo (Section 313.005–313.085), via the Bingo Division (Section 313.004.4);[7] and (2) Pari-Mutuel Wagering (Section 313.500–313.720), via

the Missouri Horse Racing Commission (Section 313.510).[8]

■ Thus, in Missouri, the only "state-licensed gambling facilities" are those that are governed by the Gaming Commission. As Trophy Room merely operates Club Keno, pursuant to a license from the Lottery Commission, and is clearly not an "excursion gambling boat," it does not meet the definition of a state-licensed gambling facility. Therefore, Trophy Room is not a casino gaming area as defined in the plain and ordinary language set forth in the Ordinance and is subject to the smoking ban. Moreover, not even Trophy Room argues—and certainly does not seek to be—governed by the Gaming Commission as an "excursion gambling boat" or a "casino," as said governance would, indeed, subject Trophy Room to greater regulation.

In the event this court were to apply the casino gaming area exemption to all other locations where activities regulated by the Lottery Commission are permitted, the narrow and limited "casino gaming area" exception would be exponentially expanded. This interpretation would not only greatly frustrate, rather than further, the Ordinance's explicit legislative intent but would also produce a patently absurd result which is strictly precluded by our canons of statutory construction.

Point I is denied.

## Points II and III—Special Laws

In Points II and III, Trophy Room avers the Ordinance violates art. III, § 40, subsections (28) and (30) of the Missouri Constitution,[9] which restricts the legisla-

---

7. Bingo is explicitly subject to the Ordinance's smoking ban. *See* Ordinance 68481 at § 4, ¶ 4.

8. Presumably, similar to an excursion gambling boat, smoking would not be banned in the event such a facility is built and licensed

by the Gaming Commission in the City of St. Louis.

9. In relevant part, Article III, § 40 of the Missouri Constitution reads as follows:

The general assembly shall not pass any local or special law:

ture from passing special laws. Resolution of Trophy Room's assertion that the Ordinance constitutes a "special law" is dispositive of both points on appeal. *See, e.g., Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 37 (Mo. banc 1982); *see also Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 831 (Mo. banc 1991) ("A claim that a statute is invalid as a 'special law' inevitably incorporates the argument that the statute treats some members of the class differently than others.").

### Standard of Review

In a court-tried case, the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Century Motor Corp.*, 477 S.W.3d at 94. We apply *de novo* review to questions of law decided in court-tried cases. *Pearson*, 367 S.W.3d at 43.

### Analysis

Our State's constitution forbids the passage of special laws where a general law can be made applicable. *Alderson v. State*, 273 S.W.3d 533, 538 (Mo. banc 2009) (citing Mo. CONST. ART. III, § 40). It is a well-established rule of law that the proscriptions imposed by Mo. CONST. ART. III, § 40 apply with equal force to municipalities and their ordinances as it does to the General Assembly. *Hunter Ave. Prop., L.P. v. Union Elec. Co.*, 895 S.W.2d 146, 152 (Mo. App. E.D. 1995).

A general law is a "statute which relates to persons or things as a class," while a special law is "a statute which relates to *particular persons or things* of a class." *City of Springfield v. Sprint Spectrum, L.P.*, 203 S.W.3d 177, 184 (Mo. banc 2006) (emphasis in original); *see also City of DeSoto v. Nixon*, 476 S.W.3d 282, 286 (Mo. banc 2016) (a special law is "one made for individual cases or for particular places or districts; one operating upon a selected class, rather than upon the public generally."). Generally, in determining whether a statute or ordinance qualifies as a "special law" courts assess "whether the law is based on open-ended or closed-ended characteristics." *City of DeSoto*, 476 S.W.3d at 287; *see also City of Springfield*, 203 S.W.3d at 184 ("whether a law is special or general can most easily be determined by looking to whether the categories created under the law are open-ended or fixed, based on some immutable characteristic").

Classifications premised upon factors that can change (e.g., population) are "open-ended" and are presumed constitutional. *City of Normandy v. Greitens*, 518 S.W.3d 183, 191 (Mo. banc 2017). If the law is general and is not found to be "special," then the rational basis test applies, under which the burden rests upon the party challenging the constitutionality of the law to demonstrate the statutory classification is arbitrary and without a rational relationship to a legislative purpose. *City of St. Louis v. State*, 382 S.W.3d 905, 915 (Mo. banc 2012).

To the contrary, a "law based on closed-ended (non-changing) characteristics, such as historical or physical facts, geography or constitutional status, is facially special because others cannot come

* * *
(28) granting to any corporation, association or individual any special or exclusive right, privilege or immunity, . . .;
* * *

(30) where a general law can be made applicable and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject.

into the group nor can its members leave the group." *City of DeSoto*, 476 S.W.3d at 287. A law premised upon closed-ended characteristics is presumed to be unconstitutional. *City of Normandy*, 518 S.W.3d at 191. The party defending a facially special law must demonstrate a "substantial justification." [10] *Tillis v. City of Branson*, 945 S.W.2d 447, 448 (Mo. banc 1997).

 Assuming, *arguendo*, the Ordinance is both closed-ended and the City failed to demonstrate a "substantial justification," we, nevertheless, elect not to usurp the legislative work of the St. Louis City Board of Aldermen and need not address the merits of Trophy Room's Points II and III in this particular case. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem.... [A] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.") (internal citations and quotation marks omitted); *see, e.g.*, *City of St. Joseph v. Leer*, 474 S.W.3d 196, 201 (Mo. App. W.D. 2015).

 Rather, we resort to the severability doctrine (or canon of interpretation), which permits a court to disregard any part of a law that is found to be unconstitutional, "while full effect will be given to such [provisions] as are not repugnant to the constitution of the state, or the ordinance[.]" *Bank of Hamilton v. Dudley's Lessee*, 27 U.S. 492, 493, 2 Pet. 492, 7 L.Ed. 496 (1829). "When an ordinance's provision is found to be invalid, the Court will not declare the entire ordinance void unless it determines that the municipality would not have enacted the ordinance without the invalid provision." *City of St. Peters v. Roeder*, 466 S.W.3d 538, 547 (Mo. banc 2015). Our inquiry is "eased" when the legislative body has explicitly provided for severance by incorporating a severability clause in the statute. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987).

The Ordinance includes a severability provision. [11] Accordingly, the "casino gaming area" provision set forth in the Ordinance has no bearing upon Trophy Room's ability or inability to permit smoking. *See* Ordinance #68481 at § 4 ¶ 3 (prohibiting smoking in bars), ¶ 9 (prohibiting smoking in gaming facilities), ¶ 16 (prohibiting smoking in restaurants). Even if the "casino gaming area" exemption is found to be unconstitutional, the exemption would be severed from the Ordinance; hence, the remainder of the Ordinance would be unaffected and continue in force and effect. Therefore, Trophy Room would remain subject to the regulations set forth in the Ordinance.

10. The term "substantial justification" is not defined. Whether a "special law" satisfies a substantial justification is premised upon the facts of the matter and the issues sought to be ameliorated by the enactment thereof. *See, e.g.*, *Bd. of Educ. of the City of St. Louis v. Mo. State Bd. of Educ.*, 271 S.W.3d 1, 10 (Mo. banc 2008) (finding the State established a "substantial justification" for a facially special law be demonstrating the law was passed to address "the long history of state-mandated, segregated schools ... the complexity of the issues and the difficulty of developing a plan that will ensure that students of all races will have a continuing equal opportunity for a quality, integrated education").

11. Section 14 of the Ordinance: "The sections, conditions, and provisions of this Ordinance or portions thereof shall be severable. If any section, condition, or provision of this Ordinance or portion thereof contained herein is held invalid by the court of competent jurisdiction, such holding shall not invalidate the remaining sections, conditions, or provisions of this Ordinance."

In *Leer*, the Missouri Court of Appeals, Western District, confronted the constitutionality of a similar "casino gaming area" exemption in relation to a municipal smoking ban ordinance. *Leer*, 474 S.W.3d at 197. In *Leer*, the defendant, a bar owner, was actually issued citations for violating the smoking ban ordinance. *Id.* The defendant challenged the constitutionality of the "casino gaming area" exemption, arguing that said exemption violated Mo. CONST. ART. III, § 40(28) and (30). In upholding the defendant's convictions, the Western District held:

> even if this Court were to find that one or more of the casino gaming area provisions in the [ordinance] was unconstitutional and, therefore, void, those provisions would be severable from the [ordinance] as a whole pursuant to [severability provision incorporated in the ordinance]. Since those provisions would be severable, the provisions under which [the defendant] was convicted would remain unaffected by any determination we might make regarding their constitutionality. Accordingly, the arguments presented in his second, third, and fourth points cannot possibly support a finding that the trial court erred in failing to dismiss the charges against [the defendant].

*Id.* at 203.

Unlike *Leer*, neither Trophy Room nor Krischke has been prosecuted or cited for violating the Ordinance. However, like *Leer*, Trophy Room seeks invalidation of the entire Ordinance, not merely the "casino gaming area" exception.[12] Insomuch as we find the "casino gaming area" exemption is severable *if* found to be unconstitutional and Trophy Room sought nullification of the *entire* Ordinance, we follow the lead of *Leer* and elect not to determine whether the Ordinance in its entirety is, in fact, unconstitutional.

Points II and III are denied.

## Points IV and V—Declaratory Judgment Regarding Section 16 of the Ordinance

In points IV and V, Trophy Room maintains the trial court erred in dismissing Counts VII and VIII of its Second Amended Petition. Specifically, Trophy Room argues Section 16 of the Ordinance, the Sunset Provision, is void for vagueness (in violation of Mo. CONST. ART. I, § 10) and is an unconstitutional delegation of legislative authority (in violation of Mo. CONST. ART. VI, § 19(a)):

### *Standard of Review*

The standard of review for a declaratory judgment action is the same as in any other court-tried case. *Century Motor Corp.*, 477 S.W.3d at 94. "The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *City of Kansas City v. Chastain*, 420 S.W.3d 550, 554 (Mo. banc 2014).

### *Analysis*

**A. Law Governing Declaratory Judgments**

 "A declaratory judgment action requires a judiciable controversy."

---

12. Trophy Room's Second Amended Petition seeks a "judgment declaring [the Ordinance], *in its entirety*, is invalid because it is unconstitutional under the Missouri Constitution[.]" Although this court may have the *authority* to declare the "casino gaming area" exemption unconstitutional and sever that provision from the Ordinance, we decline to make that determination in this matter. *City of Kansas City v. New. York-Kansas Bldg. Assocs., L.P.*, 96 S.W.3d 846, 853 (Mo. App. W.D. 2002) ("Although the prayer for relief is not part of the petition, the trial court is limited when awarding relief to a party to the relief requested in the pleadings or tried by express or implied consent of the parties.").

*Mo. Alliance for Retired Ams. v. Dept. of Labor and Indus. Relations*, 277 S.W.3d 670, 676 (Mo. banc 2009). A case presents a justiciable controversy if: (1) the plaintiff presents a real, substantial, presently existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) the plaintiff has a legally protectable interest at stake, consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief; (3) the controversy is ripe for judicial determination; and (4) the plaintiff has an inadequate remedy at law. *Schaefer v. Koster*, 342 S.W.3d 299, 300 (Mo. banc 2011); *see also* Section 527.010, *et seq.* (declaratory judgment act).

▪▪▪ "Justiciability" is a "prudential" rather than a "jurisdictional" doctrine. *Schweich v. Nixon*, 408 S.W.3d 769, 773 (Mo. banc 2013); *Mercy Hosps. E. Cmtys. v. Mo. Health. Facilities Review Comm.*, 362 S.W.3d 415, 418 (Mo. banc 2012) ("In other words, justiciability requires that the plaintiff's claim is ripe and that the plaintiff has standing to bring the underlying claim."). The existence of a justiciable controversy is essential before a court may exercise jurisdiction, and where there exists no justiciable controversy, it is an abuse of discretion for the trial court to undertake a declaratory judgment action. *Roach Law Firm v. Beilenson*, 224 S.W.3d 57, 60 (Mo. App. E.D. 2007).

## B. Trial Court's Judgment

In dismissing both counts VII and VIII, the trial court concluded:

> As to the remaining Counts of the Second Amended Petition, namely Counts VII and VIII, the Court concludes Petitioners have not satisfied all four elements necessary for a declaratory judgment. Specifically, Petitioners have not shown that there is justiciable contro-

versy, but rather, their claims are based on hypothetical situations. Count VII, the void-for-vagueness claim, and Count VII, the unlawful delegation of legislative authority claim, are both based on hypothetical situation that one of the events set forth in Section Sixteen of Ordinance 68481, namely, that other political jurisdictions enact anti-smoking legislation, or that still other political jurisdictions remove exemptions for casino [gaming areas] in their current anti-smoking legislation would occur. But Petitioners have not pled or proven that any such events have occurred, and so to render a decision on these claims would constitute an advisory opinion.

## C. No Justiciable Controversy Exists

▪▪▪ In this case, Counts VII and VIII and Trophy Room's Second Amended Petition sought a declaratory judgment that the Ordinance was unconstitutional and should therein by invalidated, premised upon Section 16 of the Ordinance. Section 16 of the Ordinance, the Sunset Provision, reads, *in toto*, as follows:

> In the event that St. Louis County, and St. Charles County or the City of St. Charles, or the State of Missouri pass ordinances prohibiting smoking in casino gaming areas, the exemption to the smoking regulation contained in Section Seven herein shall be rescinded. Provided, however, that if and when smoking is allowed in casino gaming areas in either Madison or St. Clair Counties, in Illinois, the exemption to the smoking regulation contained in Section Seven herein shall be allowed.

On appeal, Trophy Room contends that it confronts the prospect of prosecution by the City under the Ordinance, thereby conferring standing to seek redress for its claims under Counts VII and VIII of its Second Amended Petition as they are ripe

for review. *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo. banc 1986) ("Standing requires that a party have a personal stake arising from a threatened injury."). We do not contest that Trophy Room *may* subject itself to prosecution if it were to allow smoking, in that the Ordinance prohibits smoking in places such as Trophy Room. However, Trophy Room conflates and confounds the effect and consequences of Section 16 of the Ordinance with the possible penalties that may imposed for violating the Ordinance.

Contrary to Trophy Room's argument, we agree with the trial court's judgment that Trophy Room is seeking an advisory opinion on a speculative or hypothetical situation that may never come to pass. *George v. Brewer*, 62 S.W.3d 106, 109 (Mo. App. S.D. 2001) ("A declaratory judgment is not available to adjudicate hypothetical or speculative situations which may never come to pass.") (citations omitted). Whether Section 16 springs to effect or not, has no bearing upon Trophy's Rooms ability to permit smoking within its establishment— Trophy Room is prohibited from permitting smoking regardless of whether Section 16 is effectuated or not. *Foster v. State*, 352 S.W.3d 357, 360 (Mo. banc 2011) (pre-enforcement review of the statute was not ripe because the facts necessary to adjudicate the claim were not fully developed).[13]

■■■ Insomuch as the condition precedent to effectuate Section 16 of the Ordinance has not been fulfilled, Counts VII and VIII and Trophy Room's Second Amended Petition were not appropriate for judicial resolution. *Local Union 1287 v.*

*Kansas City Area Transp. Authority*, 848 S.W.2d 462, 463 (Mo. banc 1993). Therefore, "[i]t is premature to render a judgment or opinion on a situation that may never occur[,]" as a "question is justiciable only where the judgment will declare a fixed right and accomplish a useful purpose." *Id.*

Points IV and V and denied.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Robert M. Clayton III, P.J. and Mary K. Hoff, J., concur.

---

**13.** Moreover, even if this court were to find Counts VII and VIII and Trophy Room's Second Amended Petition were ripe, the severability clause (Section 14 of the Ordinance) would prevent a finding that the entire Ordinance is unconstitutional. *See Leer, supra.* Thus, the constitutionality of Section 16 of the Ordinance has no bearing upon the Ordinance's smoking ban as applied to Trophy Room.